# RUTLAND COUNTY.

## January Term, 1839.

Present, Hon. CHARLES K. WILLIAMS, *Chief Justice.*
"    STEPHEN ROYCE,
"    ISAAC F. REDFIELD,    } *Assistant Justices.*
"    MILO L. BENNETT,

## Laura Ann Munson *v.* Apollos Hastings.

The sayings of a witness, out of court, are not admissible to corroborate his testimony.

Mutual promises of marriage may be presumed from proper and sufficient circumstances:

But, *mere attentions*, though exclusive, long continued and manifesting an apparently serious and settled attachment between the parties, are not sufficient to establish a contract to marry.

This was an action of assumpsit for the breach of a promise to marry the plaintiff.

Plea, the general issue and trial by jury.

Upon the trial in the county court, the plaintiff gave evidence tending to show that the defendant commenced visiting her at her father's house as early as the fall of 1829, and that he continued those visits, without interruption, till the summer or fall of the year 1836, when he suddenly discontinued his attentions and soon after married another woman. During this period the defendant occasionally corresponded with the plaintiff, frequently carried her to ride, visited her at

almost all times of the day and evening and was received and recognized by the plaintiff as a favored suitor.

The plaintiff also gave evidence tending to show that the defendant had repeatedly admitted, on different occasions, and to different persons, that he had agreed to marry the plaintiff; that he asked the consent of plaintiff's father; that plaintiff's father purchased furniture for the plaintiff, which was shown to the defendant and he expressed himself satisfied and pleased with it.

The defendant, on his part, gave evidence tending to show that he never promised or intended to marry the plaintiff, and that if he did so promise, the plaintiff had subsequently contracted herself in marriage to one Lewis and had also had sexual intercourse with the said Lewis, before defendant's intermarriage with any other woman, and, to prove such sexual intercourse, introduced the deposition of Lura Culver, a deaf mute, who testified that, in the month of August or September, 1829, she went from her father's house to a shop, near by, where the plaintiff was weaving, expecting to see no one there but the plaintiff; that she, the deponent, opened the window blind and saw the plaintiff and said Lewis there under circumstances strongly suspicious, which were described in the deposition.

The plaintiff gave evidence tending to show that said Lura had no knowledge of a Supreme Being or the obligations of an oath, and insisted that the circumstances connected with the narration were highly improbable, and also the manner she claimed to have witnessed the facts. The defendant gave evidence tending to fortify the witness on most of these points, and, for the purpose of sustaining the general credit of the witness, offered to show that she had related the same transaction, in a similar manner, to a friend of hers sometime before giving the deposition. This was objected to by the plaintiff's counsel and rejected by the court.

The court instructed the jury, that, to enable the plaintiff to recover in this action, she must show mutual promises of marriage between herself and the defendant, and that the defendant had violated the promise, on his part, without any just cause; that, as it seemed to be admitted the plaintiff expected to marry the defendant, and the only controversy, on this point, was, whether the defendant promised to marry her,

Munson
v.
Hastings.

they should examine and weigh all the evidence upon that point, as well for the plaintiff as the defendant ; that it was not indispensable to the plaintiff's recovery that she should prove the contract of marriage, in express terms, but the jury might infer such contract from those constant, long continued and exclusive attentions, on the part of 'the defendant to the plaintiff, which, in the circle in which the parties moved, would, ordinarily, be understood as conclusive evidence that the parties were engaged to marry each other. If they believed such attentions were intended by the defendant to give the plaintiff so to understand, and she did so understand, and if the defendant thus kept the plaintiff along, for years, with the expectation of becoming his wife, they would be warranted in finding that the defendant promised to marry the plaintiff, although they should believe that he secretly intended not to marry her, but only to delude and deceive her.

The court further explained, that attentions, of a character to warrant a jury in inferring a promise of marriage, must be something more than mere civilities, such as gentlemen of common politeness always feel bound to extend to ladies of their acquaintance ; that they should be attentions of an exclusive and unequivocal character, such as no honorable gentleman would extend to a lady, and no prudent lady would receive from a gentlemen, unless a contract of marriage existed between them; that if, from all the testimony, they found that the parties mutually promised to marry each other, in any one of the modes set forth in the declaration (explaning them) this part of the case was made out.   Other matters were given in charge to the jury which were not excepted to. The jury returned a verdict for the plaintiff.  To the charge above set forth, and the decisions of the court, the defendant excepted.

*P. Smith* and *E. A. Ormsbee,* for defendant.

I. The testimony offered by the defendant to corroborate the deposition of Lura Culver, ought to have been received. When the credit of a witness has been impeached, in any respect, the party calling him may introduce confirmatory testimony. 1 Phil. Ev. 229, 230. 1 Stark. Ev. 148, 149. *Rex* v. *Clark,* 2 Stark. R. 149.   *Tuttle* v. *Russell,* 2 Day's R. 231. As Lura Culver was a deaf mute and her deposition was discredited by evidence *aliunde,* it was proper to corroborate it

by proving she had related the same story on a former occasion. The relation was made at times and under circumstances that collusion cannot be suspected and it forms a most decisive test of credibility. 1 Phil. Ev, 230-1. 1 Stark. Ev. 148-9. *Lockwood* v. *Betts*, 8 Conn. R. 130. *State* v. *De Wolf*, Do. 93.

II. The charge of the court to the jury was entirely wrong.

1. The charge of the court was such that the admissions of the defendant, "that he had agreed to marry the plaintiff, and that he asked the consent of the father, &c." stated in the case, are of no consequence in deciding the question now before the court. The jury were told they would be at liberty to find the promise from other facts and without relying upon the admission, &c.

2. The jury were directed to find the defendant promised to marry the plaintiff, if they were satisfied the attentions of the defendant were intended by him to give her to understand, and she did understand, that he designed to marry her and she indulged the expectation of becoming his wife, for years, provided the attentions were constant, exclusive and long continued, and such as would ordinarily induce the community to believe they were engaged. This is the substance of the charge and we contend that the facts, to which the jury were thus directed, fall far short of making out a promise on the part of the defendant to marry the plaintiff.

3. The court, in the charge, assumed that an expectation indulged by the plaintiff of becoming the wife of the defendant, was a sufficient consideration to support a promise of the defendant, and without any promise or obligation on the part of the plaintiff to marry the defendant.

4. The charge was "*felo de se*," inasmuch as the jury were told they would be warranted in finding that the defendant promised to marry the plaintiff, though satisfied he never intended to marry but to delude and deceive her. The action is assumpsit and is there any case or authority to warrant the idea that the plaintiff can recover, if, in fact, no contract was made and her claim is merely for fraud or deceit?

5. The case shows no testimony, introduced by the plaintiff, tending to show deceit or fraud, and there was nothing to warrant the court in leaving it to the the jury to find fraud or deceit.

RUTLAND,
January,
1839.

Munson
v.
Hastings.

*C. Linsley and Clark & Harrington*, for plaintiff.

I. An express promise to marry need not, in any case, be proved. The promise must be mutual and it was very early held that the promise of the woman might be inferred; hence, the promise of both may be. The promise, it is true, must be express, unless fraud is practiced, but the proof may be presumptive. It has been sometimes loosely thrown out, that this was an exception to a general rule, but it is in strict analogy with the whole system of evidence. Whilst the highest crimes known to the law may be proved by presumptive testimony, it would be most extraordinary if such evidence should be held insufficient to substantiate a contract. 3 Salkeld, 16, 64. 6 Modern, 172. 1 Salkeld, 24, note b. Chitty on Contracts, 157. 2. Starkie's Ev. 941. *Wightman* v. *Coates*, 15 Mass. R. 1. 6 Cowen, 254, cited in Chitty on Contracts, page 158, note 1.

II. The charge is clearly correct in relation to fraudulent conduct by the defendant. On subjects of this kind, every attempt to sever the law from a high and elevated morality has been most manfully resisted, both in England and in this country. The charge does not say that the jury may presume a contract when they believe there never was one, but they may, from presumptive testimony, find a contract, although they believe that the defendant never intended to perform that contract.

III. The offer to prove that a witness has told the same story out of court, when not under the solemnity of an oath, to establish the truth of what the witness really does swear to, would be found as inconvenient in practice as it is deceptive and fallacious in principle. On this point our practice has been decided and unwavering and accords with the principles of the common law, and such testimony has invariably been excluded. 1 Starkie's Ev. 159. 3 Do. 1757.

The opinion of the court was delivered by

ROYCE, J.—There are cases in which evidence of the previous declarations of a witness is not only proper, but where the want of such proof would require a satisfactory explanation. Those are cases, however, where the silence of the witness would operate strongly to discredit the fact afterwards sworn to ; as in the case of bastardy, rape, robbery and the

like. But, in general, though the sayings of a witness, out of court, may be received to impeach him, they are by no means admissible to corroborate his testimony. The reason is, that they constitute but hearsay evidence, mere declarations without the sanction of an oath, and because, in the case of a witness already laboring under suspicion, they are rarely calculated to increase, in any degree, the confidence due to his testimony. The decision of the county court, rejecting the evidence proposed, was clearly correct.

The remaining enquiry relates to the kind of evidence necessary to prove the alleged promise. And, in order to determine whether the defendant's exception upon this part of the case is well taken, we must lay out of consideration certain portions of the evidence which had a direct tendency to establish the promise; such as the defendant's admissions, his approval of furniture, &c. The contested portion of the judge's charge relates exclusively to a different species of testimony.

That mutual promises of marriage may be implied from proper and sufficient circumstances can admit of no doubt. But the question presented by the charge, is, whether they can be implied from *mere attentions*, though exclusive, long continued, and manifesting an apparently serious and settled attachment between the parties. It is certain that such attentions do not constitute the agreement of marriage, though they usually precede it. They may be of longer or shorter continuance, without terminating in such a contract. And hence the difficulty of determining when, if ever, they should be admitted to furnish sufficient legal evidence that the contract has in fact been made. It might, at first view, be inferred from the verdict, that the jury must have found the addresses of the defendant to have been marked with every characteristic mentioned by the judge; as that they were not only constant, long continued, and exclusive, but such as an honorable gentleman would not bestow, nor a prudent lady receive, unless a marriage contract had been formed between them, and that they would ordinarily be considered, by the circle in which the parties moved, as conclusive evidence that such contract existed. But, since the case alludes to no fact or circumstance upon which to predicate a conclusion that the attentions were in any respect such as honor or prudence

RUTLAND,
January,
1839.

Munson
v.
Hastings,

would usually forbid, they need only to be considered in reference to the period of their continuance, and their influence upon the belief of friends and acquaintances. That they were constant and exclusive was no more than what is generally observed where the parties are respectable.

The length of time was such, in this instance, as to evince a degree of indiscretion in both parties, and especially the plaintiff, if a marriage was not agreed upon. But the law has not determined that any particular period of courtship shall be evidence of a marriage contract. If protracted to a needless and unreasonable extent, it is even calculated to excite doubts in others whether it is finally to result in marriage. We are of opinion that neither the time, in this case, nor the other considerations which I have mentioned, were sufficient to justify the finding of an actual contract. Nothing need be added as to the probable opinions and belief of third persons. It is clear that to allow such opinions to influence the finding of this contract, as between the direct parties to it, would be giving place to a principle which is wholly inadmissible in other cases.

Judgment of the county court reversed.