## STATE *v.* JOHN C. FLINT.

### *Criminal Law.    Practice.    Evidence.*

1. It was not error to allow counsel for the State to ask jurors whether they would disregard the testimony of an accomplice.

2. The order in which peremptory challenges shall be exercised rests in the discretion of the trial court.

3. There is an exception to the rule, that proof of declarations made by a witness out of court is not admissible in corroboration of his testimony; namely, when an attempt is made to discredit a witness on the ground that he is under the influence of some motive to make a false statement in consequence of his relation to the party or to the cause, it is proper to show that he made a similar statement before the relation existed.

4. ACCOMPLICE. Where an accomplice testified in the court of examination, just after the crime had been committed, to a conversation had with the respondent just before it had been committed, and also testified to the same conversation in the court below, and the respondent claimed that he had made up his story from information derived from some late source, it was *held*, that the accomplice's testimony, given at the preliminary hearing, was admissible, not in corroboration, but as tending to show that he had previous knowledge.

5. But where it was claimed that a witness had become confused and led into making contradictory statements on re-cross-examination, proof was not admissible to show that his testimony given at a former trial was the same as that given in his examination in chief at the last one.

6. It being important to determine how much time was required for a man to travel the distance between a certain hotel and the place where the crime was committed, testimony relating to this question, given by those who passed over it for the purpose of being witnesses, was admissible. Dissimilarity in conditions would only go to its weight.

7. Evidence of the notoriety of a crime is admissible to prove that the respondent knew of it at a time when he claimed that he had not heard of it; but if incompetent it would become harmless on failure of the attempt to show such fact.

State *v.* Flint.

8. The evidence in behalf of the State tended to show that the respondent eluded his bail; the respondent, to rebut the presumption of guilt arising from conceal-ment, used his bail as a witness, who testified that he advised him to go away to escape a civil suit for damages, and that he then *believed* he would come back; *Held,* that it was not legal error to allow the inquiry on cross-examina-tion as to what he *thought* about his coming back after he, the bail, had got a bench-warrant for him.

9. OFFICER. The fact that an officer having charge of the jury in a case in which he was a witness, was present during their deliberations after it had been submitted to them, is not sufficient cause for setting aside a verdict. although it was an impropriety, and another officer ought to have been selected.

INDICTMENT for burglary. Trial by jury, June Term, 1887, ROWELL, J., presiding. Verdict, guilty. Exceptions by the respondent.

The State's evidence tended to show that the respondent, who lived in Hancock village, at a distance of 66 rods from the hotel, and one Charles Blair, who lived about one mile from said hotel, and who was a witness on the part of the State, on Friday, June 6, 1884, spent a considerable portion of the day together fishing in the stream which runs through said village, and while so fishing partially planned the crime upon which the indictment is founded; that during the evening of the same day they met at the hotel in the centre of said village and consummated the arrangement for the commission of the crime; that respondent then left Blair at the hotel, went to the post office, 30 rods distant, where he found Jennie D. Whitton, whom he accompanied to the house of one Lewis, 141 rods distant from said hotel, and then returned to the hotel and rejoined Blair; that soon afterwards, about 10 P. M., they started out to commit the crime; that the route pursued by them was indicated by a red dotted line upon the map used on the trial; that upon starting out from the hotel respondent went around the west end of the hotel and Blair the east end, up the road towards Granville, to where the Blair road, so called, intersects the Granville road, then up the Blair road to a certain butternut tree, near which he met respondent; that from said tree they went by the nearest course to the house of James Welch, distant from the hotel, by the route aforesaid, 396 rods, where the burglary was committed; that Welch was

20

eighty years of age, living alone, and when found by respondent and Blair was abed with his pants on, in which was a wallet containing $90 in bank bills and some promissory notes; that Welch was throttled and the wallet taken from his pocket; that they retraced their route as far as the butternut tree, where they separated, Blair going up the Blair road to his house, where he arrived at about 11.40 P. M., and respondent going down the Blair road and Granville road past the hotel aforesaid, where he appeared at about 11 P. M.; that the night was light, the moon shining, obscured somewhat by light scattering clouds; that on their way to Welch's they stopped to tie on some cloth masks, and on their return to find a shoe lost off by Blair in his haste to get away, and to divide the money which they had stolen.

That respondent and Blair were arrested on Tuesday morning following the commission of the crime, and the examination before the justice was held on the following Thursday. The case was tried at the December Term, 1885, and again at the December Term, 1886, upon both of which trials Blair was improved by the State as a witness respecting all matters connected with the crime, and he was in like manner improved on this trial.

Before the introduction of any evidence the respondent's counsel claimed, in his opening statement to the jury, that respondent left said hotel at about 9.30 P. M. the night of the robbery, went to said post-office, and from there with said Whitton to said Lewis', leaving the latter place at about the time the clock in Lewis' house struck ten, and went leisurely home, where he arrived at about 10.30, and was up stairs and in bed at 11 P. M.; that it would appear that, by the account of the transaction by Blair upon former trials as to the time when they left the hotel and the time when Blair arrived home, and the time when the State claimed that the respondent was seen passing the hotel on his return from Welch's the time was too limited to permit of their going, committing the crime and returning.

The first exception is sufficiently stated in the opinion.

As to the second exception, the respondent requested that the State be required to exercise both its peremptory challenges, before he was required to exercise any; but the court ruled that the State should exercise only one peremptory challenge at first, and that the respondent should then exercise three peremptory challenges, before the State exercised its second peremptory challenge, and the respondent his other three afterwards. Thereupon the State exercised its first peremptory challenge and the panel was filled; then the respondent exercised two peremptory challenges, and the panel being filled he said that he did not desire to exercise any further peremptory challenges, as the panel then stood. The State then exercised another peremptory challenge and the panel was filled. As some of the jurymen were out deliberating upon their verdict in another case, this exhausted all the regular jurors in attendance upon court; and the respondent's counsel then stated that he should have challenged one more of the panel, as it then stood, peremptorily, but that all the regular jurors for the term having been drawn it would necessitate the taking of a talesman, and he therefore declined to make use of any further peremptory challenges.

As to the third exception, it appeared, that the State improved the said Whitton as a witness, who gave material testimony as to the hour when the respondent left her, as aforesaid, at the Lewis house, to the effect that the clock struck ten about five minutes after he left her; and that the witness identified four letters, as having been written to her by the respondent in the month of June, 1884, while he was in jail.

Upon cross-examination, with a view to impeach the witness, the respondent's counsel drew out the following facts, viz., that the witness was summoned and improved as a witness by the respondent at the trial of this cause at the December Term, 1885, and again summoned by respondent to the trial at the December Term, 1886, but then improved by the State as a witness; that at said last named term, upon Saturday, she was

brought to Middlebury by said Blair, and the trial began the following Monday; that she had retained said letters in her possession until the Saturday aforesaid, when she gave them, upon his demand, to the state's attorney; that she remained at the Addison House over Sunday with Blair and his wife, and was in Blair's company a considerable portion of the time during the trial, while taking their meals and at other times, and in their room at the hotel more or less; that upon cross-examinations by the State on the first trial in December, 1885, she had testified that she corresponded with respondent while in jail as aforesaid.

For the purpose of sustaining the witness against the impeachment resulting from the cross-examination, in respect of her intimacy with Blair and his imputed influence over her, prompting her to falsify, the State, against respondent's objection, was permitted to show in its opening that at the December Term, 1885, she upon direct examination by respondent gave substantially the same testimony as .to the time when the clock struck at Lewis' house with reference to the time respondent left her on the night of the burglary, as she gave upon this trial.

The fourth exception : For the purpose of showing how long it would take to travel the distance from the hotel by way of said butternut tree to Welch's and to return to said tree and thence by the Blair road to Blair's house, the State was permitted to show by one Jones, who walked without stopping over substantially the same route from the hotel to Welch's house and thence back to the butternut tree as the State's evidence tended to show was travelled by respondent as aforesaid on the night of June 6th, 1884, and from said tree by the Blair road to Blair's house, how long it took him to do so; also by a deputy sheriff, Olin A. Smith, hereinafter referred to, and R. E. Dunham, who walked together without stopping over the same course in the day-time while the trial was in progress, how long it took them to do so. Jones, Smith and Dunham performed this journey at the instance of the State

and for the purpose of giving testimony in the cause. It appeared that part of the way thus walked over was through woods and on a side hill, and was more or less rough and stony, and that there was no path in which to walk. And it did not appear that these witnesses had any previous knowledge of the route Blair claimed to have followed in going from the butternut tree to Welch's and in returning to the tree.

Their testimony tended to show that no one acquainted with the route ever pointed it out to them on the spot, but that their knowledge of it was derived from description by those acquainted with it, and that they followed as near as they could.

The fifth exception : Blair, in his direct examination, testified that while on the fishing ground as aforesaid respondent told him that he could make some masks to wear while committing the crime out of some black pieces of cloth that his mother had in a trunk up stairs in respondent's room, and that such masks were furnished by respondent and used by them in the commission of the crime.

The respondent denied having had any talk with Blair when fishing about robbing Welch, and claimed that the fact that the officers found pieces of black cloth in a trunk as aforesaid might have been, and probably was communicated to him before he testified before the justice, and that this was how he came to know anything about black cloth.

The State was then permitted, against respondent's objection, to show that Blair's testimony before the justice, at said court of examination, respecting the conversation with respondent on the fishing ground about the making of the masks from the black pieces of cloth as aforesaid, was the same as upon the trial. To the admission of this evidence the respondent excepted.

As to the sixth exception, it appeared that on the Sunday following the commission of the crime, the respondent told one Kidder that he did not hear of the crime until the night before about four o'clock.

The State sought to show that the commission of the crime had become so notorious in the community there before four o'clock, Saturday, that the respondent must have heard of it before, and so falsified when he said he did not.

The State therefore called upon one Marsh, as a witness, who was the grand juror who signed the complaint to the justice, and asked the following questions, viz. :

Q. How notorious Saturday afternoon in Hancock village was the fact of the robbery of Welch? A. It wasn't notorious enough so that I heard of it until about two or three o'clock or after.

Q. To what extent was it talked about at that time? A. Well, I found that they pretty much all knew it around the village.

The seventh exception was waived.

As to the eighth exception, it appeared that the respondent improved one Kill as a witness, who on the re-cross-examination made various statements tending to contradict his former testimony given in this trial; that he testified at the former trial of this cause at the December Term, 1886; and the respondent offered to show that Kill's testimony given at that time was the same as that given upon this trial in his examination in chief. The court refused the evidence.

As to the ninth exception, it appeared that the State's evidence tended to show that the respondent eluded his bail and remained in concealment during the June Term, 1885, when he was indicted and wanted for trial. For the purpose of rebutting the presumption of guilt arising from his escape, one Vinton, who was his bail, was used by him as a witness.

The tenth exception stated that the respondent filed a motion to set aside the verdict on the ground that said Sheriff Smith, who had been an important witness for the State, was constantly in the same room with the jurors during their deliberations after they had been charged, until they had agreed upon their verdict.

The court found that said Smith was in constant attendance

upon the jury during their deliberations. The other facts are sufficiently stated in the opinion.

*Henry Ballard*, for the respondent.

1. The question put to the jurors called for a public expression of their opinion as to the weight they would give to the testimony of the most important witness for the State. The answer practically committed the jurors to decide in advance before they had seen the witness. A similar question might as well be put as to any other witness. There is the same reason why such an expression of opinion as to a witness should disqualify, as an expression of opinion as to the merits of the case. *Boardman* v. *Wood*, 3 Vt. 574.

2. The ruling of the court as to peremptory challenges was erroneous. It practically denied to the respondent one challenge. " The respondent has always been allowed to use his peremptory challenges as he should find occasion in the process of making the panel." BENNETT, J., *State* v. *Fuller*, 39 Vt. 74.

It may be made at any time before the jurors are sworn. *Hooker* v. *State*, 4 Ohio, 348 ; 1 Bish. Crim. Proc. A respondent is not obliged to take a talesman, except in certain cases. *Hildreth* v. *Troy*, 101 N. Y. 234 ; 2 Cen. Reporter, 275 ; 1 Bish. Crim. Proc. 554.

3. The testimony of the witness Whitton given at the former trial was not admissible. It was offered and introduced generally without any limitation as to its effect. The cross-examination was proper ; it did not impeach the witness ; but simply showed that she had been more or less intimate with Blair, a state witness ; and it had no tendency to show an improper intimacy. *Adams* v. *Thornton*, 3 South. Rep. (1887) ; *Munson* v. *Hastings*, 12 Vt. 346 ; 17 Mich. 435 ; 45 N. Y. 577 ; 13 Vt. 209. Former declarations are never admissible, except where it is claimed that the testimony of the witness is of recent fabrication ; or that the witness is testifying corruptly from some cause that has arisen since the

declarations were made.    And then such evidence is received with a limitation as to its effect.    *Clever* v. *Hillbury*, 9 At. Rep. 647 ; 1 Whar. Ev. 570 ; *Zell* v. *Commonwealth*, 94 Penn. St. 273.    But a witness can be corroborated by his previous declarations only when some independent evidence has been introduced to impeach him, and not because of an impeachment resulting from a cross-examination.    Stark. Ev. (9th ed.) 224 ; *Coffin* v. *Anderson*, 4 Blackf. 395 ; *State* v. *George*, 8 Ired. 324 ; *Dossett* v. *Miller*, 3 Sneed, 72.

4.   The testimony of Jones, Dunham and Smith was not admissible.    The experiments were made under conditions and circumstances so dissimilar in all respects as to raise a multitude of collateral questions, which would mislead the jury.    It was not shown that these witnesses went at the same rate of speed or over the same route that Blair did.    *Haynes* v. *Burlington*, 38 Vt. 363 ; *Branch* v. *Libbey*, 78 Me. 221 ; s. c. 57 Am. Rep. 810.

5.   The allowing of Blair's former testimony was error.    It was simply put in twice for the purpose of showing that it was the same at both trials.    There was no suggested limitation as to its effect.    There was no claimed impeachment of the witness.

6.   Evidence as to the notoriety of the crime ought not to have been admitted.    If ever admissible, the margin of time, upon which to predicate the fact, was too small.    Ninety-nine persons might have heard of it and the one-hundredth might not, and that one the respondent.

7.   If the court was right in admitting the former testimony of the witness Whitton, it was certainly error to exclude that of the witness Kill.

8.   It needs no authority or argument to establish the proposition, that what Vinton, the respondent's bail, *thought* was not evidence.

9.   The verdict should have been set aside for the cause alleged in the motion.    In the case of *People* v. *Knapp*, 42 Mich. 267 (s. c. 36 Am. Rep. 438), in an elaborate opinion, Judge COOLEY lays down the rule that the presence of an

State *v.* Flint.

officer with the jury during their deliberations, is good ground for setting aside the verdict, even though such officer has not been a witness. *State* v. *Snyder*, 20 Kan. 306, is to the same effect. Both of these cases are referred to with approval in *Gainey* v. *People*, 97 Ill. 270; s. c. 37 Am. Rep. 109. What would be said of a verdict where the jury were compelled to deliberate in the presence of all the witnesses?

*Chas. M. Wilds*, for the State.

Bias from peculiar view of the law is good cause for challenge. 1 Bish. Cr. Pr. s. 917; *Commonwealth* v. *Austin*, 7 Gray 51; *People* v. *Ah Chung*, 54 Cal. 398; *Gates* v. *People*, 14 Ill. 433; *Smith* v. *State*, 55 Ala. 8; *State* v. *McAfee*, 64 N. C. 339.

Such inquiries made to the jurors on the *voir dire* are important to enable the party to intelligently exercise the peremptory challenges. *Walson* v. *Whitney*, 23 Cal. 375; *State* v. *Mann*, 83 Mo. 589; *Monaghan* v. *Ag. F. Ins. Co.* 53 Mich. 238; *People* v. *Sar Soy*, 57 Cal. 102; *Lavin* v. *People*, 69 Ill. 303; *State* v. *Shields*, 33 La. An. 991.

The order in which the State and respondent shall exercise their respective peremptory challenges is discretionary with the trial judge. *Commonwealth* v. *Piper*, 120 Mass 185; *State* v. *Pike*, 49 N. H. 406; *Mfg. Co.* v. *Canny*, 54 N. H. 314; *Kansas* v. *Bailey*, 32 Kan. 83; *State* v. *Hays*, 23 Mo. 287; *State* v. *Vestal*, 82 N. C. 563; *State* v. *Vand*, Id. 631.

The rule did not prejudice the respondent. When the jury were sworn, he had four peremptory challenges. *State* v. *Goffney*, 56 Vt. 451; *State* v. *Lawler*, 28 Minn. 217; *Hopt* v. *Utah*, 120 U. S. 430; *Hays* v. *Mo.* Id. 68.

Under the claim that the witness Whitton had fallen under the influence of Blair, it was proper to prove that she testified on the first trial the same as on the last one. Steph. Dig. Ev. Art. 131 n.; 2 Phil. Ev. 974; 1 Starkie Ev. 221; 2 Russell on Cr. 940; *Robb* v. *Hackley*, 23 Wend. 50; *Wihen* v. *Law*, 3 Starke N. P. C. 63; *Durgin and Wife* v. *Danville*, 47 Vt.

State *v.* Flint.

95; *Com.* v. *Wilson*, 1 Gray, 340; *State* v. *Hopkins*, 56 Vt. 263.

The testimony of Jones, Dunham and Smith was admissible. The main and important condition—the distance—was the same in both cases. The dissimilarity in the other conditions goes to the weight, not to the relevancy of the evidence. BARRETT, J., *Walker* v. *Westfield*, 39 Vt. 246; *Kent* v. *Lincoln*, 32 Vt. 591; *Darling* v. *Westmoreland*, 52 N. H. 401; *Com.* v. *Piper*, 120 Mass 185.

It was clearly competent to show that the accomplice had knowledge of the black pieces of cloth when he testified in the court of examination, and that he demonstrated such knowledge at that time. It was also proper to show the notoriety of the crime. The attempt was not successful and did not prejudice the respondent.

The declarations of the witness Kill are clearly within the general rule. *Munson* v. *Hastings*, 12 Vt. 346.

The presence of the officer in the jury room, while the jury were deliberating upon their verdict, was not prejudicial to the respondent. *State* v. *Hopkins*, 56 Vt. 263; *Crockett* v. *State*, 52 Wis. 211; *Gainey* v. *People*, 97 Ill. 271; *State* v. *Hopper*, 71 Mo. 425; *State* v. *Caulfield*, 23 La. An. 148; *Slaughter* v. *State*, 24 Texas, 410; *People* v. *Hartung*, 4 Parker, Cr. C. 316; *Commonwealth* v. *Shields*, 2 Bush. 8.

That the officer was a witness does not alter the case unless the respondent shows that it prejudiced his right to a fair and impartial trial. *State* v. *Lockwood*, 58 Vt. 378; *People* v. *Coughlin*, Mich. 9 W. Rep. 129; *Dunbar* v. *Parks*, 2 Tyler, 217.

The opinion of the court was delivered by

VEAZEY, J. I. Respondent's counsel insist that it was error for the court to allow the counsel for the State to ask the jurors whether the fact, that a witness produced by the State who participated in the commission of the crime for which the respondent was on trial, would cause them to disregard such witness' testimony.

State *v.* Flint.

It is plain that if a juror had such a settled view of his duty that he would wholly disregard such a witness' testimony on that account, he would not be a suitable man for a juror. It being legal evidence in the case, the trier is bound to regard it. He is not bound to believe any witness. An accomplice's testimony is to be weighed for what it is worth, like that of other witnesses. It may not be believed, but it can not be wholly disregarded.

The propriety of such inquiry must rest largely in the discretion of the trial court. This case illustrates such necessity. It had been tried twice without an agreement; it was known that the State's case depended on the testimony of an accomplice to such an extent that without his testimony a conviction would not be warranted; it is not uncommon to hear men say they would not believe an accomplice in any case. Should a court under such circumstances be powerless to find out whether the jurors were so mentally constituted that they could not try the case according to their oath? We think the ruling was clearly correct.

II. There was no error in the ruling in respect to peremptory challenges. The statute allows six peremptory challenges to the respondent in a criminal case and two to the State, but makes no provision as to the order in which they shall be exercised. In many states this is discretionary with the trial court. See cases in plaintiff's brief. And I apprehend this is the rule to which all courts must come when the order is not regulated by statute. Grave objections will occur to any arbitrary rule, either statutory or judicial. But until an arbitrary rule is made, the ruling must rest in discretion. This is shown in this case. The court below made a rule for the order of challenges in the case, to which exception was taken. We hold there was no error. Why? Not because there is any settled rule regulating the matter pursuant to the order adopted, but because it was fair, and because a respondent can never justly complain of a rule as to the order of peremptory challenges which leaves him a satisfactory panel before his

peremptory challenges are exhausted. Strictly, this court only says that the County Court exercised sound judicial discretion, which is practically saying that the question rests in discretion. I should therefore say so in terms. I believe that the " impartial jury," which the Constitution of the State says the accused person is entitled to, is more likely to be obtained under the rule of discretion than by any arbitrary rule as to the order of peremptory challenges which either the legislature or the courts can make. But this case does not necessarily call for a decision beyond the point that we find no error available to the respondent under this exception.

III. We hold that the ruling was correct under which proof was received as to the testimony of the witness Whitton on one of the former trials.

It is a well established rule that proof of declarations made by a witness out of court in corroboration of testimony given by him at the trial is inadmissible. But with this rule there has come an exception which exactly applies to this case. It is stated in one form by BRONSON, J., in *Robb* v. *Hackley*, 23 Wend. 50 : " If an attempt is made to discredit the witness, on the ground that his testimony is given under the influence of some motive prompting him to make a false and colored statement, the party calling him has been allowed to show, in reply, that the witness made similar declarations at a time when the imputed motive did not exist." In Greenleaf on Evidence, sec. 469, the author states the rule thus : " But evidence that he has on other occasions made statements, similar to what he has testified to in the cause, is not admissible ; unless where a design to misrepresent is charged upon the witness, in consequence of his relation to the party, or to the cause ; in which case, it seems it may be proper to show that he made a similar statement before that relation existed." See also Stephen's Dig. Law of Ev. Art. 131, note and cases there cited ; 2 Phil. Ev. 445 ; Bull. N. P. 294 ; 1 Stark. on Ev. 187, marg. p. ; *Conrad* v. *Griffey*, 11 How (U. S.), 479, Bk. L. ed. 779, note and cases therein cited. The attempted

impeachment here was based on the changed relation of the witness to the party.

IV. The objection to the testimony of Jones, Smith and Dunham, was that it did not appear that they had travelled over this route under the same circumstances and conditions as when travelled over by Blair and his accomplice, whom he charged to be this respondent.

The terminal points were known and the intervening country was described. Blair also testified to the circumstances of the crime and the delays in going and returning. The testimony tended to show the time of departure and return ; it was material to know whether the intervening time was adequate. An experiment showing that it was practicable to make the trip in the time would furnish some aid on the point. The distance was the same in both cases ; dissimilarity in other conditions would go to the weight of the evidence, but would not render it wholly irrelevant. If the distance had been so great that it could not be accomplished in the time given by Blair, the respondent clearly could have shown that fact by experiment, as it would have weakened, if not nullified, Blair's testimony. Hence the State could show the converse. The exception is not well taken.

V. Without the evidence objected to under the fifth exception the case of the State had this weakness : It could be well claimed, as it was in substance, that Blair's testimony as to what the respondent said to him about making masks from black pieces of cloth in a trunk in his room was made up from information that came to him from some late source, about the officers having found such cloth in a trunk in respondent's room. This was the posture of the case upon the testimony of Blair, the accomplice. The State then proceeded to show that neither the discovery of the black cloth in the trunk, nor anything relating to it, was communicated to Blair until after he gave his testimony in the court of examination.

Now in this attitude of the evidence and under this claim of the respondent, if the fact existed that Blair had knowledge

about this cloth, before or at the time of the examination before the justice, which was within a few days after the commission of the crime, it would be a potent circumstance tending to meet the respondent's said claim. If Blair swore before the justice on this point the same as he swore at this trial, proof to that effect would tend very strongly to show the fact of such knowledge before he received the information upon which he might have made up the story told on this trial. In short, it would exactly meet the phase of the case which the respondent's denial and claim presented. The evidence was admitted solely for this purpose, and, as we think, correctly. Such was the ruling in *McAuley* v. *R. R. Co.* 33 Vt. 311. It was not admitted, and was not admissible, on the ground that the former testimony was consistent with the latter, and therefore corroborated the latter. It seems that this was once the law in England, where a witness stood discredited from any cause. *Lutterell* v. *Reynell*, 1 Mod. 282. But later, this doctrine was exploded. *King* v. *Parker*, 3 Doug. 242; 1 Phil. Ev. 307, note; 1 Stark. Ev. 149, n. And the present English rule has obtained in the American courts, except in some cases based on the early English cases which have since been overruled in England. See collection of same and remarks thereon in 1 Phil. Ev. (C. & H.) pp. 776-779. The admissibility of such evidence for corroboration is squarely denied in this State. *Munson* v. *Hastings*, 12 Vt. 346. But, as shown under point *three*, *supra*, the legal authors, Greenleaf, Phillips, Starkie, and others, agree that evidence of former sayings of a witness may under special circumstances be admitted; and such are the decisions. *Robb* v. *Hackley*, *supra*, and cases there cited. Loosely speaking, such special circumstances constitute exceptions to the general rule; strictly speaking, this case is not an exception because the testimony was not admitted to confirm the witness, although it indirectly had that effect; but was admitted for the purpose above stated, and its admission was within the reason for the

State *v.* Flint.

admission of such evidence under special circumstances as stated by legal authors and in adjudged cases.

VI. Under this exception the respondent's counsel insists that a person's knowledge of a crime at a particular time can not be established by evidence of its notoriety at that time.

To test the soundness of this proposition, as applied to this case, suppose the proof had been that this village was very small, that this crime had become so generally known on Saturday morning, and had created such an excitement, that the people were mostly in the streets in groups talking about it, and that the respondent had passed along by these groups and stopped and listened to their talk ;—clearly, this would have been legal evidence tending to show that he then heard of the crime. The thing therefore which the State started out to prove was legitimate. The failure of the attempt could not change the legal quality of the evidence ; it would thereby, even if incompetent, become harmless error, rather than reversible error.

VII. This exception is waived.

VIII. This is but the ordinary attempt to corroborate the testimony of a witness by showing his former declarations. They were properly rejected. *Munson v. Hastings*, 12 Vt. 346. None of the elements exists which would bring this point within the special circumstances under which such evidence is admissible, as alluded to under points three and five above.

IX. As Vinton had testified in his direct examination as a witness in behalf of the respondent, that when he bailed him he advised him to go away to escape civil suit for damages, and that he then *believed* he would come back, it could not, as we think, be legal error for the court to allow the inquiry on cross-examination as to what he *thought* about the respondent's coming back after he, Vinton, had got a bench warrant for him. The materiality of the witness' belief the one way or the other is not very apparent ; but the subject was opened by the respondent, and he cannot be heard to complain that the court allowed an inquiry in the same line in cross-examination.

State *v.* Flint.

X. there is much force in the reasons stated in some cases why an officer in charge of the jury during their deliberations on a case submitted to them should not be present in the room so as to hear what is said by the respective jurors, and so possibly by his presence impede or hinder a free and full expression of views; and especially when the officer has been a witness on the trial. In Michigan (*People* v. *Knapp*, 42 Mich. 267), (s. c. 36 Am. R. 438), and in Kansas (*State* v. *Snyder*, 20 Kan. 306), such presence of an officer has been held, as matter of law, to be good ground for setting aside the verdict. But in this State, as well as some others, it has been held otherwise; especially where it did not appear that any conversation concerning the case had been had by the officer with any of the jurors. *State* v. *Hopkins*, 56 Vt. 263; *State* v. *Lockwood*, 58 Vt. 378. The officer's oath plainly contemplates his presence in the room with the jury. He swears not to speak to them about the matters submitted to their charge, except to ask them whether they are agreed, and that he will not disclose the verdict of the jury or any conversation they may have had respecting the cause they have in charge, etc. Moreover, we understand it has been the practice always in this State for the sworn officer having charge of the jury to be present with them more or less during their deliberations. It has the advantage of convenience and it is not understood that bad results have come from the practice.

While such presence of the officer can not, under our practice and decisions, be regarded as cause for setting aside a verdict, it should be regarded as an impropriety, when he stands in peculiar relations to the cause by reason of having been a witness, or for other reasons, and courts and officers of courts should be on their guard to prevent it. Officers for this service should be selected who are not thus obnoxious.

The judgment is that there is no error in the proceedings of the County Court, and that the respondent takes nothing by his exceptions, and that he be sentenced upon the verdict.