ADDISON,
January,
1841.

Gibbs & Boies
v.
Linsley.

---

### GIBBS & BOIES *v.* CHARLES LINSLEY.

Where a merchant made a sale of all his stock in trade, including articles of a third person, which he held for sale, which sale was fraudulent and void as to his creditors, such third person cannot maintain trover against such merchant's creditors, who attached said articles, as the title passes by the sale to the vendee, as to all men, except the creditors.
Where one delivers property, all of the same kind, to a merchant, acting also as a factor, who proceeds to sell the same, the owner cannot avoid such sale by showing that, in truth, he only authorized the sale of but a part of the articles.
When a witness is discredited, by testimony against his general character, testimony tending to show he has formerly given the same relation as that to which he now testifies, is not admissible.

TROVER, for a quantity of axe-helves.

Plea, not guilty. Issue to the court.

On the trial below, the plaintiffs introduced the deposition of Joseph C. Ketchum, who testified that in the fall of 1837, he received from the plaintiffs, who resided in Connecticut, twenty-five dozen axe-helves, which were sent to him to sell

on commission; that, in addition to that quantity, the witness received twenty-seven dozen axe-helves, which were sent to him by the plaintiffs through mistake; that the helves were put in a store-room, occupied by the witness, and he thought he did not sell any of them, but notified the plaintiffs, by letter, of the manner in which they were left, and that he had no other interest in the helves than to sell them on commission for the plaintiffs, who owned them.

The plaintiffs also proved, by the testimony of Ira Stewart, that, in the fall of 1837, he purchased of the said Ketchum his stock in trade, and, among the stock of goods so purchased, were the axe-helves in question; that he took possession of the property so purchased, and the whole of it was soon after attached, by the creditors of Ketchum, as his property, and, eventually, was sold on executions against Ketchum. Evidence was also given tending to prove that the defendant was the attorney of the creditors of Ketchum, and was present at the time of the attachments and assenting thereto.

It also appears that there had been an arbitration, in regard to the property sold by Ketchum to Stewart, between said Stewart of the one part, and the creditors of Ketchum, who attached it, and the sheriff who served the writ, and the defendant, of the other part, and that it had been decided, by the arbitrators, that the sale by Ketchum to Stewart was void, as against the creditors of Ketchum. This award the plaintiffs offered to give in evidence, but, being objected to by the defendant, it was excluded.

The plaintiff offered, also, to prove by the declarations of Ketchum, made at the time of the arrival of the axe-helves, that some of them came from the plaintiffs to Ketchum, tied up in bundles, by mistake, and were not consigned to him to sell on commission; but the court excluded such declarations.

The defendant gave evidence tending to impeach the general character of Ketchum for truth and veracity; after which the plaintiffs again offered to give in evidence the aforesaid declarations of Ketchum to sustain him; but the court excluded them.

The court did not find that any of the axe-helves in question came into the possession of Ketchum by mistake; but that all

ADDISON,
January,
1841.

Gibbs & Boies
v.
Linsley.

of them were consigned, by the plaintiffs, to him, to sell on com-¬ mission, and that, prior to the attachment, he had, with other goods, sold them to Ira Stewart, which sale, for aught that appeared, was a legal and valid sale. And the court gave judgment for the defendant. The plaintiffs excepted to the decision of the county court.

*E. D. Barber*, for plaintiffs.

Two questions are presented in this case.

*First*,—Was the award offered in evidence properly ex-¬ cluded.

*Second*,—Was the declaration of Ketchum admissible.

1. The present inquiry in relation to the award is, was it admissible as between the parties in the case? An award, regularly made under the submission of the parties, operates conclusively as a judgment of a court of competent jurisdiction. 2 Stark. Ev. 136. The general rule as to the admissibility of a judgment, as evidence of a fact, so far as parties are concerned, is, that no one ought to be bound, as a matter of private right, by a judgment or verdict to which he was not a party. 1 Stark. Ev. 97. Do. 184–5. Nor, in general, is he concluded by a verdict or judgment, where his adversary was not also a party to it. *Ib.* But this rule can extend only to causes where the verdict or judgment was against the party, who is attempted to be concluded by it. For if it be in his favor, he can have suffered no prejudice by reason of its having been obtained upon the testimony of that adversary, and has had an opportunity to examine the witnesses. A verdict or judgment may be given in evidence, under the general issue, against a party who was privy to the same, when the fact involved and to be found, is the same which was settled by the verdict or judgment. 2 Aiken, 342. Gil. Ev. 35–38.

In the next place, would the award tend to prove any fact pertinent to the issue in the present suit, or was the fact involved in the arbitration and settled by the award, the same as the fact to be proved on the trial in the court below? It appears from the case that the property in question, with other property, had been sold by Ketchum to Stewart—that the property, in the possession of Stewart, was attached by certain creditors of Ketchum (the defendant acting as their

ADDISON,
January,
1841.

Gibbs & Boies
v.
Linsley.

attorney) as the property of Ketchum, treating the sale to Stewart as fraudulent, and that the suits and the subject matter of the same were submitted to arbitrators, who awarded that the sale to Stewart was fraudulent and that the creditors could hold the property attached as the property of Ketchum.

To avoid the effect of the sale to Stewart by Ketchum and to show that the defendant, as one of the parties to the arbitration, had procured an adjudication, by which the property was placed back in the possession of Ketchum, and had been appropriated by the defendant and the creditors aforesaid, as Ketchum's property, and that, by consequence, the defendant could not set up the sale to Stewart as a valid sale, to defeat the recovery of the plaintiffs, the real owners of the property, the award was offered.

The award was proper testimony, in connection with other showing, to prove that the sale of the property in deposit, by Ketchum to Stewart, was fraudulent as to plaintiffs.

The case shows that the property, including the axe-helves in question, sold by Ketchum to Stewart, went into the possession of Stewart. The award of the arbitrators must then, of course, proceed upon the ground that the sale was fraudulent, *in fact*, as against the creditors of Ketchum. If then the plaintiffs stand in the same equitable relation to that sale that creditors of Ketchum would, the award would be conclusive to show that the sale was fraudulent as to them; but if not conclusive, at least, proper with other testimony, to establish that fact. It would seem impossible to imagine a sale that would be fraudulent in fact as to creditors, that would not be as to bailors.

2. The declarations of Ketchum, made at the time of the reception of part of the helves, that they came from the plaintiffs by mistake, were admissible on two grounds.

*First*, as proving the fact that they were the property of plaintiffs, not consigned to sell on commission; and

*Second*, to sustain his testimony as given in the deposition, after an attempt to impeach him.

Under the first head, they were proper because they were part of the *res gestæ*. 1 Stark. Ev. 46-7-8, 306, 309, 319. 1 Saund. P. & Ev. 56. 2 do. 557. Declarations accompanied by an act, especially when against the interest of

the person making them, are facts and not relations depending upon the credibility of this individual for their force.— *Bridge* v. *Eggleston,*14 Mass.245 *Phelps* v. *Foot,*1 Con. R. 387. *Bateman* v. *Bailey,* 5 Term Rep. 512. 6 East, 193. *Pool* v. *Bridges,* 4 Pick. 378. *Nooden* v. *Cowles,* 11 Con. Rep. 292. The declarations of Ketchum, in this case, show what was the nature of Ketchum's possession, and stand upon the same footing as the declarations of tenants of real estate. In the latter case, their declarations against their interest or right are admissible, though the witness be living. *Beecher* v. *Parmalee,*9 Vt. R. 352. *Walker* v. *Broadstock,* 1 Esp. 458. *Ivat* v. *Finch,* 1 Taunt. 141. *Griswold* v. *Bard,* 4 Johns. 230. *Waring* v. *Walker,* 1 Johns. 339.

Under the second head, they were admissible to sustain his relation in the deposition :

Because they were part of the transaction—were made before any question arose as to the title to the helves, and were against his interest. By the attempt to impeach Ketchum, the faith of the triers might have been shaken in his testimony, as a fabrication of late date, got up for the occasion after the dispute arose. The declarations offered would have rebutted this presumption. 1 Stark. Ev. 148. Phil. Ev. 230. Gil. Ev. 280. *Lutterel* v. *Raynall,* 1 Mod. 281. *Friend's case,* 4 Stat. Trials, 613. *R.* v. *Clark,* 2 Stark. R. 242. *Rice* v. *Bancroft,* 11 Pick. 469.

Defendant, *pro se.*

1. The declarations of Ketchum were not evidence, because Ketchum was a witness in the cause, and it would be a strange anomaly to examine a witness on oath and also introduce as evidence the stories he had told when not under oath.

The declarations of a party are in some cases admissible. The statements of a witness, when not under oath, never.

2. When a witness is impeached, evidence that he had before given the same relation is not admissible to sustain him. *Munson* v. *Hastings,* 12 Vt. R. 346.

3. Ketchum having the property in question, with power to sell, has exercised that power, and the title to the proper-

ty passed to Stewart. Hence the plaintiffs have no claim, except on Ketchum, the agent.

ADDISON,
January,
1841.

Gibbs & Boies,
v.
Linsley

The opinion of the court was delivered by

COLLAMER, J.    The first question this case presents is, was the award between the defendant and Stewart admissible in this case?    As a general rule, no judgment can be given in evidence to settle the facts or matter on which the judgment was founded, unless it is reciprocal, and conclusive upon both the parties. This award would not bind the present plaintiffs, who were not parties to it. But there are other objections. The plaintiffs commence this action of trover as *owners* of the axe-helves.    They prove that Ketchum, their agent, sold them to Stewart, with all his stock of goods, and that the defendant attached them, with the other stock, on the debts of Ketchum.    They now propose to prove, by the award, that the sale by Ketchum to Stewart was void as to Ketchum's creditors. If the plaintiffs' title has passed to Stewart, it is entirely immaterial to them whether Stewart can maintain an action, as most clearly the plaintiffs cannot, *without title.*   If Ketchum had authority to sell the axe-helves, his sale to Stewart passed the plaintiffs' title, and that could not, as to the plaintiffs, be affected or changed by any motives or conduct between Ketchum and Stewart, as to Ketchum's *creditors.*    The title, as to the plaintiffs, would be in Stewart until the plaintiffs showed that the sale of Ketchum was fraudulent and void, *as to them.*   The award was, therefore, inadmissible, because the fact it tended to show was, as to the plaintiffs, immaterial.

Before the sale to Stewart, these helves were the property of the plaintiffs, and Ketchum claimed no title to them. They could not have been taken by his creditors, and therefore he could not, by possibility, have been induced to sell them to Stewart to avoid his debts, whatever may have been his motive in selling the goods, which were really his own.    The sale, therefore, of these helves to Stewart, must have been untainted with the pretended fraud.

The plaintiffs next proceed on the ground that the sale from Ketchum to Stewart, in relation to some part of these helves, was unauthorized, and not binding on the plaintiffs ; and, for this purpose, they read the deposition of Ketchum, tending to prove that he received only a part of the helves

for *sale*, and a part were sent him by mistake, which he held as naked bailee. They then proposed to prove that Ketchum, on one occasion, when he received the helves, stated the same thing. This was rejected by the court.

It may, perhaps, be true, in relation to personal property, as it is of real estate, that the *statement* of the possessor, in relation to the extent, nature, and character of his possession, may be admissible, as a general rule. But it is to be borne in mind, that this was an issue of fact, *to the court*, and, in the order in which this testimony was offered, it must, even if admissible, have been extremely weak. Ketchum, in his deposition, had fully *testified* to the fact, and the court might well have said, when themselves were trying the issue, we do not now wish to hear that he once *said* what he now *testifies*. The purpose of this testimony was to show the sale to Stewart, in part, unauthorized. If the sale to Stewart was such as the plaintiffs could not avoid, their title was gone, and they could not maintain this suit. Ketchum, it seems, was a general trader, and was also a factor, employed in selling goods for others. The plaintiffs put into his hands a quantity of axe-helves. All the helves which he had not previously disposed of, he sold to Stewart. Can the plaintiffs vacate and avoid that sale by showing that they only authorized Ketchum to sell a part of the helves? This would, most obviously, spring a trap upon the purchaser. The sale of goods, under an agency, has given rise to many nice questions, which, in England, have been wisely put at rest, on equitable ground, by statute. 6 Geo. 4, ch. 94. But, even at common law, an agency was implied from the general course of business and usage of trade, especially in mercantile transactions. Hence, it has been uniformly holden that " if the owner of goods send them to an auction room, or to a broker whose business it is to sell goods of that description, the owner will be bound by the sale, without any express consent." Chitty on Con. 64. 2 Starkie's Ev. 57. *Pickering* v. *Busk*, 15 East. 38. *Whitehead* v. *Tuckett*, Id. 400. The plaintiffs, then, could not have avoided the sale made by Ketchum to Stewart, by showing that a part of the helves were not left for sale. The sale was, therefore, binding on the plaintiffs, though they had shown that fact. It was, therefore, immaterial, and so there was no error in its rejection.

It appears that after the defendant had given testimony of general bad character to discredit Ketchum. The plaintiffs, to sustain him, offered to prove he had once before given the same account of the transaction as that to which he now testifies. Was this admissible ? Where a witness has been discredited by showing that he has given contradictory accounts of the transaction, there, it has formerly been holden, he might be sustained by showing that he had previously given the same account that he now gives in his testimony; and Gilbert so lays it down, upon a decision in H.Mod. But this has been entirely repudiated. 1 Phil. Ev. 213. 1 Stark. Ev. 148. It has been holden in this state, that, when a witness has been discredited by evidence of his having given a different relation, even when this evidence appeared from his own cross examination, he might be sustained by evidence of general good character. *State* v. *Roe*, 12 Vt. R. 110. But the converse of this proposition, that is, that when his general character is impeached, he may be sustained by proof of his consistent relations, has not been, and, we think, ought not to be, decided.