JAMES FOWLIE'S ADMX. *v.* McDONALD, CUTLER & CO.

February Term, 1910.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed February 14, 1912.

*Opinion of Non-expert Witness—Admissibility—Responsiveness of Answer—Master and Servant—Injuries to Servant—Evidence —Similar Accidents—Jury—Peremptory Challenges—Examination—Scope and Extent—Discretion of Court—Argument of Counsel—Exemplary Damages.*

In an action for the death of plaintiff's intestate while operating a dump car at defendants' quarry, and claimed to have resulted from the failure of defendants properly to instruct intestate, the testimony of intestate's fellow servant, who was not found to be an expert, that when intestate chained a stone "he would go around just the wrong way about it," and that "in barring stone upon the dump he sometimes put his bar in where it was not required," was the mere opinion of the witness, and so inadmissible.

Where a question to a non-expert witness, and the caution of the court, confined the answer to a description of what witness saw intestate do, the answer, "well, in barring stone upon the dump he sometimes put his bar in where it was not required," was mere opinion, and so not responsive.

In an action for the death of defendants' servant from the unexpected and spontaneous tilting of a dump car that he was operating, where plaintiff claimed that, because of the defective condition and construction of the car and its appurtenances, this was liable to happen, evidence of a prior similar occurrence, when the car spontaneously dumped

in another direction, was admissible, although the condition of the track and load was not shown to be the same.

Testimony of a prior accident with the dump car was not made inadmissible by the fact that, between that accident and the one in question, the dump car had been repaired, where the witness testified that he examined the car after the accident in question, and that the defect that caused the prior accident still existed.

A party may prepare himself for the exercise of his right peremptorily to challenge jurors by inquiries of them regarding matters that are not a disqualification, but the existence of an immaterial and prejudicial fact should not be suggested unnecessarily.

The course and extent of an examination on the *voir dire* is largely within the discretion of the trial court.

In an action for personal injuries, plaintiff, on the *voir dire*, doubtless has the right to ask the jurors generally whether any of them "had ever been employed as agent of an employer's liability insurance company," if that is found essential to his protection, even though it be prejudicial to defendant, but it is not decided whether in this case that question was properly allowed.

In an action for personal injuries, a remark by plaintiff's counsel in argument, that the jury in their discretion might award "such sum as they think would be just," in the nature of interest, for the failure of defendant to settle when the liability accrued, was objectionable, as indicating that punitive damages might be awarded for failure to settle without trial.

CASE for negligence. Plea, the general issue. Trial by jury at the September Term, 1909, Washington County, *Waterman, J.*, presiding. Verdict and judgment for the plaintiff. The defendant excepted.

This case has been once before in the Supreme Court, 82 Vt. 230; and the opinion there should be read for a statement of the case. Plaintiff claimed that defendants have no available exception to the admission of the testimony referred to in the opinion, in view of what occurred when that testimony was received, which was as follows:

Plaintiff called one McGrannahan as a witness and, on direct examination, asked him: "Now you may describe what you saw about Mr. Fowlie as to the way in which he did his work?" To this question, or any answer thereto, counsel for defendants objected, as improper under the opinion above referred to. Thereupon some discussion was had, wherein

plaintiff's counsel stated:  "I am not asking for his opinion. I am only asking him to describe what he saw." And then the court ruled that the witness might describe the manner in which Fowlie did the work, saying, "I understand your inquiry is limited to this particular work, and to this very car." Thereupon defendant's counsel said: "I object to it as not proper evidence; the witness is incompetent to testify on that matter."

At this point the transcript reads: "Exception by Defts. The Court: Proceed." And then the witness answered: "Well, when we chained a stone he would go around just the wrong way about it"—Whereupon defendant's counsel interrupted with, "Wait! That is opinion,—didn't go at it right." Here followed a discussion in which plaintiff's counsel insisted that the witness was stating a fact, and not giving his opinion. And then the court said: "Under the decision of the Supreme Court, you will have to confine him pretty closely to just what he saw, and just how it was done, nothing more than that," and declined to find that the witness was qualified as an expert. Thereupon plaintiff's counsel said: "As far as 'the wrong side' is concerned, that may be stricken out," but it was not. Referring to the above, the bill of exceptions states: "As to whether there is any exception to this question and answer, reference may be had to the transcript of Mr. McGrannahan's testimony."

Immediately after the foregoing, the transcript shows the following, in further direct examination of this witness:

"Q.   Now you may go on with your description of the things you saw him do there. Well, go ahead, Mr. McGrannahan, and state everything else that you observed.

Defendant's Counsel:   I think he should caution the witness, if the court please, not to express an opinion or a conclusion.

Plaintiff's Counsel:   The witness has been cautioned on the matter as far as we can, in view of the decision that was made.

Witness:   Well, in barring stone on the dump, sometimes he put his bar in where it was not required.

Defendants' Counsel:   To that I object. I say that it is not responsive.

Plaintiff's Counsel:   Well, I think it is proper, and responsive to the question.

Defendants Counsel: That I object to. That is the trouble we had during the last trial.

The Court: Well,

Q. Well, go on with anything else you saw when working around the car.

Defendants' Counsel: I have my exception to that question?

The Court: Yes, an exception may be noted, if you wish it to stand. Exception by Defts."

Thereupon the court cautioned the witness to confine his answer to the above question to stating just what Fowlie did. Then the witness attempted to answer, was interrupted by an objection by defendant, which started a discussion between counsel, called forth a further like caution by the court to the witness, and finally the witness was asked another question.

The bill of exceptions concludes with: "The reporter's transcript of the testimony and charge, and exceptions, properly certified by the reporter, is to govern in case of discrepancy between the stated case and the evidence in the case."

*Richard A. Hoar* and *B. R. Bygrave* for the defendants.

It was error to allow plaintiff to inquire whether any of them had ever been employed as agent of an employer's liability insurance company. *Casselmon* v. *Dunfee*, 172 N. Y. 507; *Sawyer* v. *Shoe Company*, 90 Me. 369; *O'Neill Mfg. Co.* v. *Pruitt*, 110 Ga. 577; *Barrett* v. *Bonham Oil & Cotton Co.*, 57 S. W. 602; *Lippchutz* v. *Ross*, 84 N. Y. Supp. 632; *Hoyt* v. *Davis Mfg. Co.*, 98 N. Y. Supp. 1031; *Geo. A. Fuller Co.* v. *Darragh*. 101 Ill. App. 664; *Wildrick* v. *Moore*, 66 Hun. 630; *Manifold* v. *Block etc. Co.*, 80 N. Y. Supp. 861.

*John W. Gordon* and *S. Hollister Jackson* for the plaintiff.

Munson, J. The plaintiff's intestate was killed while engaged with one McGrannahan in operating a dump car on the defendants' quarry. One matter in issue was whether the deceased was so wanting in experience and skill that he was entitled to instructions. It appears that the work of these men

included the handling of blocks of granite of irregular shape weighing several tons.

The plaintiff called McGrannahan, and inquired of him under exception, "You may describe what you saw about Fowlie as to the way in which he did his work?" and the witness replied, "Well, when we chained a stone he would go round just the wrong way about it." Plaintiff inquired further, "You may go on with your description of the things you saw him do there— state anything else you observed?" and the witness replied, "Well, in barring stone upon the dump he sometimes put his bar in where it was not required." This answer was allowed to stand against defendants' objection that it was not responsive. Nothing further was obtained from the witness regarding Fowlie's method of chaining or his use of a bar. The court declined to find that the witness was qualified as an expert.

On a former trial, (82 Vt. 230, 12 Atl. 989) this witness was asked, "You may tell in detail in what way he did his work?" and answered that he did his work like a man who had never worked about a quarry; and this was held error. The questions asked here were substantially the same as that one; and the evidence was of the same character, in that it left the matter to stand solely on the opinion of the witness without presenting any facts from which the jury could form its own opinion. But in one respect the evidence is somewhat different. The answer in the first case covered all the possible duties of the deceased, without indicating a single thing that the witness had in mind, or even that he had anything in mind. Here the witness goes further, and gives two examples of Fowlie's lack of skill. But the evidence is still nothing more than the opinion of the witness, and its admission cannot be sustained unless the examples given are within some recognized field of opinion evidence.

In considering the subject further it will be sufficient to take up the last statement of the witness, that in barring a stone Fowlie would sometimes put his bar in where it was not required. This is not the description of a mere appearance or movement; as when it is said of the person observed, he looked sick, he walked as if he was tired, he carried the bag as if its contents were heavy. It is not the description of a simple proc-

ess, where the mere statement of the thing done shows the want of experience or skill; as if it were said of a workman that he could not strike with an axe twice in the same place, or that he could not hit a nail on the head with a hammer squarely and consecutively. Here, the question whether the thing done showed skill or the lack of it depended upon the relation of the act to a. variety of conditions. Among these might be the size of the stone, the movement intended to be produced, the manner in which the force was to be applied, the shape and surface of the stone as affording chances for the required hold, the nature of the bed on which it lay as affording resistance to the bar, the choice of available opportunities, co-operation in movement with another workman. To make the evidence admissible,—assuming that it was otherwise competent,—it was necessary for the witness to give some of the conditions which made Fowlie's act improper. The want of this leaves the evidence a matter of opinion without a basis of description. Nothing appears as to what Fowlie did, except that he did something wrong. Whether the thing done really was wrong was left to stand solely on the judgment of the witness.

The plaintiff claims that the answer was responsive, and so not within the exception taken Being no more than the opinion of the witness, it was not responsive to a question which called for description. The question in terms called for description, although it wrongly assumed that the answer previously given was description. But in a long intervening discussion the court had repeatedly confined the inquiry to matter of description, and plaintiff's counsel had repeatedly stated that that was all he was asking for. The exception taken was sufficient to save the question.

This witness was permitted to testify that a few weeks. before the accident the car gave them trouble by dumping foward. The defendant contends that this was error, because the dumping testified to was in a different direction from that which caused the accident, and because the conditions as regards the track and load may have been different. It appears that the table of the car could be turned on the circle in the frame to permit the dumping of the load in various directions, and was so hinged that it could be tilted for that purpose, with connections to.

prevent its til ing of its own accord; and appears further that the plaintiff claimed that the construction of the car, its worn condition, and the length of the restraining chain when hitched as tightly as the links permitted, were such that the table was liable to tilt of its own accord when the car was in operation. In view of the facts and claims stated, we think the evidence was admissible.

One Shappy, a witness for the plaintiff, was permitted to testify that he had used this car on the old dump before it was removed to the dump where Fowlie was working; that once while he was using it before its removal the stone "came back" on them, and the car went down the dump. The plaintiff claimed that this car was made out of two other cars of unequal size, by putting the table of the larger car on the body of the smaller one, and that the resulting projection was a defect which contributed to the accident. The defendant's objections to the above evidence were based on the facts that the car had been repaired several times, and that the witness's knowledge of it was previous to these repairs. But the evidence in question was received in connection with Shappy's further evidence that he made up this car from parts of two cars as above stated; that he examined the car the day Fowlie was killed and used it soon after; and that the only alterations that had been made in the car were such as he described. The evidence received as above stated was admissible.

In impaneling the jury, the plaintiff was permitted to ask of the jurors generally, against the defendants' objection and exception, whether any of them "had ever been employed as an agent of an employers liability insurance company." It does not appear that any preliminary questions bearing upon this matter had been asked, and the inclusion of all the jurors in the inquiry indicates that none had been asked.

It has always been held in this State that a party who has the right of peremptory challenge may prepare himself for its exercise by inquiries regarding matters which are not a disqualification. *State* v. *Godfrey*, Bray. 170. It is undoubtedly true that the course and extent of an examination on the *voir dire* is largely within the discretion of the trial court. *Quinn* v. *Halbert*, 57 Vt. 178. It is nevertheless a fundamental principle governing

inquiries by jury that a case shall be tried on knowledge of it obtained in court, and that that knowledge shall be confined to matters pertinent to the issue. This would seem to require that the existence of an immaterial and prejudicial fact should not be suggested to the jurors unnecessarily, either before or during the trial. But a plaintiff is doubtless entitled to put a question like the one objected to if found essential to his protection, even though prejudicial to the defendant. We are not entirely agreed upon a disposition of the question as presented, and so leave the matter without further discussion.

Objection having been made to something said in argument, by plaintiff's counsel with reference to the interest that the jury should allow, counsel proceeded to say: "I do not claim that they have got to, but it is within their discretion to allow such sum as they think would be just, and 1 say it is usually put in the form of interest, though strictly speaking I don't understand that it is interest; but it is such a sum as in your sound discretion you think you should allow for not having this settled when the liability accrued; "and upon an exception being asked and allowed counsel added: "That is the law." However intended, this might easily be taken to mean that the defendants ought to be punished for not settling the plaintiff's claim without putting her to the delay and expense of a trial. The remarks were objectionable; but as the case stands it is not necessary to consider the incident further.

*Judgment reversed and cause remanded.*

HASELTON, J., dissents.