STATE *v.* PATRICK DALEY.

*Criminal Evidence.*　Res Gestæ.　*Character as Evidence.*
*Respondent's Testimony.*

1.　The respondent was indicted for stealing a heifer; he *admitted the taking ;* but claimed that *he had lost one* some three months before, and supposed this one was his own.　*Held,* that the respondent's declarations *made while hunting after his own* heifer, *and the fact of his hunting before the alleged larceny,* were admissible.
2.　The court charged as to the respondent's testimony: "He has the utmost interest that a party can have. He has all the interest that can originate and be inspired by the peril in which he is, &c., &c. Well, now that matter of interest is to be considered by the jury in weighing his testimony." *Held,* not erroneous.
3.　The court told the jury that the respondent had the right to put his *good reputation* before them for their consideration, "*as a kind of make-weight in his favor, if there is a pinch in the case.*" *Held,* error, as tending to impress the jury with the belief that evidence of good character was of no value.

THIS case was tried at the March Term, 1880, BARRETT, J., presiding.　Indictment in two counts, charging the respondent with the larceny of a heifer, and with receiving the same heifer, knowing her to have been stolen.　The State claimed that the respondent committed the larceny on the 19th day of August, 1879. The respondent admitted the taking ; but claimed that he thought the heifer was his own, one that had strayed from his pasture three months previously.　As to the respondent's testimony the court charged :

So it is obvious under that statute, if a party goes upon the stand, it is because he desires and designs that his evidence shall make in his favor ; shall tend to shield him from the consequences of the charge that is made against him.　That developes exactly the interest that he has.　He has the utmost interest that a party can have.　He has all the interest that can originate and be inspired by the peril in which he is, and the charge that is made against him, when he is brought to trial ; all the interest a party can have in not being convicted of the crime with which he is charged.　That is the position in which a person charged with crime stands when he goes upon the stand as a witness.　Well, now that matter of interest is to be considered by the jury in weighing his testimony.　You hear what he testifies, and you see

State *v.* Daley.

his manner, and you judge of the likelihood of the story he tells ; taken in and of itself, in its intrinsic character, having relation to the subject. You consider what he testifies in its relation to the other evidence in the case, either making against what he testifies or giving it corroboration. His testimony is before you for your consideration, having reference to the interest in which he is as a witness ; having reference to whatever characterizes the testimony he gives ; having reference to the other evidence in the case, as it bears upon the testimony that he himself gives.

As to evidence of good character :

But a person who has maintained a good reputation down to the time of the act, may put that good reputation before a jury for their consideration, in connection with the other evidence in the case, as a kind of make-weight in his favor if there is a pinch in the case. And that is about all that can be said about it, as it is handled in the books and applied and illustrated in the cases. As matter of course the fact that a man has had a good reputation down to the time he is charged with a crime does not prove that he did not commit that particular crime. We all understand as matter of common knowledge (and the instances have been thickening, and thickening, and thickening to a most alarming extent in these later years) that men holding high station in society and most responsible position in the church, and in business affairs, all at once turn up to be of the very highest grade of criminals, who have been carrying on for years false entries and figures, and covering their tracks and all that, and when the facts are developed and the thing becomes to be made known, everybody is astounded.

*State's attorney,* for the State, cited on the admissibility of the evidence, Barbour's N. Y. Digest, 2, 155 ; Starkie on Ev. 1, 195 ; N. Y. Weekly Dig. 4, 38 ; *Brandon* v. *The People,* 42 N. Y. 265 ; *Rex* v. *Edwards,* 4 Term, 440 ; 4 Denio, 502 ; Roscoe's Crim. Ev. 181 ; Starkie's Ev. Part 2, 134, 145 ; Greenl. Ev. s. 459 ; 1 Carr. & P. 85. As to good character, Barbour's N. Y. Dig. vol. 1, 878 ; *Com.* v. *Webster,* 5 Cush. 295.

*W. C. Dunton* and *Ormsbee & Briggs,* for the respondent.

The declarations of the respondent were a part of the *res gestæ. Allen* v. *Duncan,* 11 Pick. 308 ; 1 Whar. Ev. s. 262 ; *State* v. *Howard,* 32 Vt. 380 ; *Elkins* v. *Hamilton,* 20 Vt. 628.

As to the effect to be given to evidence of good character in this class of cases, see 1 Best on Ev. sec. 262 ; *Commonwealth* v. *Webster*, 5 Cush. 324 ; 1 Greenl. Ev. sec. 54 ; 2 Starkie on Ev. 202 ; *Cancemi* v. *People*, 16 N. Y. 503 ; *Remson* v. *People*, 43 N. Y. 8 ; *Stover* v. *People*, 56 N. Y. 315 ; *People* v. *Lamb*, 2 Keyes, 377.

The opinion of the court was delivered by

TAFT, J. I. The respondent had given evidence tending to prove that about the 20th day of May, 1879, he had lost, by her straying from his pasture, a heifer closely resembling the one in question, and claimed that he took the latter at the time he did, in August afterwards, believing it to be the one he had so lost. He proposed to show by witnesses that in June immediately following his alleged loss, he was hunting after, and inquiring about stray cattle, and particularly this stray heifer, so claimed by him to have been lost ; that he was so hunting and inquiring within two or three miles of his house, and in places where cattle in large numbers were usually kept. This proposed evidence was rejected ; and the respondent insists that it was error. No case directly in point has been cited by counsel, and we are not aware of any where the question has been expressly adjudicated. The authorities cited by the respondent's counsel are upon the question of the admissibility of the sayings and declarations of a party as a part of the *res gestœ*, admitted to be such, and not upon the question of whether the acts themselves in regard to which the declarations were made, were admissible, which seems to us to be the real question in this case. If it was competent for the respondent to show that in May before the taking of the heifer he lost a similar one, and that in June he was hunting for her, it would, we think, be proper for him to show his sayings and declarations in connection therewith. In *State* v. *Howard*, 32 Vt. 380, in speaking of the declarations of the party as to the purpose of her journey, REDFIELD, Ch. J., says : " The declarations were of the same force as the act of going and were admissible as part of the act." In *Elkins* v. *Hamilton et al.*, 20 Vt. 627, the same judge says as to the declarations of a witness : " the court were no doubt right in

State *v.* Daley.

regarding his naked declarations, as not being competent evidence; and equally correct in admitting them when made in connection with his acts, which became controverted matters in the trial." In fact, it is well established, that where evidence of an act done by a party, is admissible, his declarations, made at the time, having a tendency to elucidate, explain, or give character to the act, are also admissible. They are admissible because they are a part of the transaction, as well in favor of, as against the party making them, and may be given in evidence by the defendant as well as the State. So the question in this case is, whether the fact that the respondent had lost and was looking for the heifer, was proper evidence for the defence; if it was, then his declarations when he was so looking for it were admissible, as a part of the *res gestœ*. How far they may satisfy a jury that what was done and said was in good faith, is another matter; the weight of the evidence might have been light, but it was admissible. The respondent admitted the taking of the heifer, but claimed that three months prior he lost one and made search for it; and that he took the one in question, supposing it was the one so lost. We think it was his right to prove such loss and search, and in connection therewith, and as a part of the transactions, his declarations at the time. Declarations of persons are often admissible in their own favor, as in case of illness and personal injury. In *Reg.* v. *Abraham*, 2 Car. & Kir., 550, the prisoner had stated, that the property which he was charged with stealing, was found by him in a field. ALDERSON, B., in charging the jury, said : " That if it had appeared that before suspicion attached on the prisoner, he had given this account of his possession of the property to his neighbors, the property being there at the time, and before search was made—he had not the slightest doubt that *valeat quantum*, this would have been very competent evidence for the prisoner." Many other instances might be cited. But whatever view may be taken of this question, the testimony certainly became admissible when the prosecution were permitted to give evidence tending to show that the respondent made no complaint of the loss of such an animal; and that he had not in fact looked for one. Whether he had lost a heifer, and had looked for her, were, under the re-

spondent's claimed defence, very material and important facts; and to permit the State to prove that he made no complaint of such loss, and no search for the animal, and deny the respondent the privilege of rebutting such proof, seems to us, to be depriving the respondent of that impartial trial, which the constitution guarantees to every one.

II.  The charge of the court in respect to the interest of the respondent as affecting his testimony, seems to us unexceptionable.

III.  The respondent excepted to that part of the charge relating to the evidence introduced to show his previous good character, and although in conclusion the learned judge says that the respondent has a right to have it considered with the other evidence upon the question of whether he is guilty, we think the whole charge would naturally mislead the jury as to the weight to be given such evidence, and the effect of it; for the court told them that the respondent had the right to put his good reputation before them for their consideration, " as a kind of make-weight in his favor, if there is a pinch in the case." Such expressions would naturally impress the jury with the belief that the evidence was of no value, except where the respondent was entitled to an acquittal without it; and such, we think, was the probable effect of the charge in this case. A respondent in all criminal cases is entitled to the privilege of putting his character in issue. If he offers evidence of his good character the prosecution can rebut it; and the jury have the right to give it such weight as they think it is entitled to.

In 1 Starkie on Ev. 75, it is said such evidence " ought never to have *any* weight except in a doubtful case." If this is law, all such evidence might as well be excluded; for if the case is doubtful, before its introduction, (and that is the undoubted meaning of the quotation,) the respondent is entitled to an acquittal without it; if the jury have a reasonable doubt of the prisoner's guilt, it is their duty to acquit; hence the evidence becomes unnecessary; and if Mr. Starkie is correct in his proposition, where the case is not doubtful upon the other evidence, it is not entitled

to *any* weight, and so would be needlessly in the case.   It is un-doubted law in this State that, in criminal cases, the jury are judges of the law : but the instructions of the court are generally followed.   And on this trial if they found there was no *pinch in the case*, on the other evidence than that of character, the verdict of guilty naturally followed without reference to the evidence of character.   Such evidence is not only useful in cases of doubt, but it is equally so, for the purpose of creating, generating doubts. There are probably many cases, where, without it, the jury should convict, but with it should acquit.   As has been said by a learned court, Iowa, " A long and honorable life must be worth some-thing to a man when accused of a crime in cases other than those where the evidence, independent of his good character, is doubtful or obscure " ;  and we think he is entitled to the benefit of it, and to have it considered by the jury, without its being shorn of ef-fect, by their being told that it is only of use *in a pinch.   State v. Northrop*, 48 Iowa, 583 ;  *People* v. *Garbutt*, 17 Mich. 9.

Exceptions sustained, verdict set aside, and cause remanded for a new trial.