STATE v. JAMES M. RYDER.

Special Term at Brattleboro, November, 1907.

Present: ROWELL, C. J., TYLER, MUNSON, and WATSON, JJ.

Opinion filed January 16, 1908.

*Criminal Law—Wrongful Attempt to Produce an Abortion—
Evidence—Sufficiency—Res Gestæ—Disputed Handwriting
—Standards of Comparison—How Proved—Measure of
Proof—Exceptions—Too General.*

Declarations, otherwise inadmissible in evidence, are admissible as
a part of the *res gestæ* only when they grow out of and elucidate
a principal and material fact or transaction, are contemporaneous
therewith, and derive some degree of credit therefrom.

In a prosecution of wrongfully attempting to produce the mis-
carriage of a pregnant woman, who died in consequence
thereof, where the State's evidence that she burned two letters
which the State claimed were written to her by the respondent
was admissible for the purpose of laying the foundation for sec-
ondary evidence of their contents, her declaration, made when she
burned the letters, that she was going to burn them because her
sister might get hold of them, was admissible against the re-
spondent as a part of the *res gestæ.*

The State having offered to show the pregnancy of the deceased by
her declarations, the respondent said that if it was the State's
purpose to connect him with it he did not object, whereupon the
State said that it was its purpose subsequently to do that, and
thereupon the evidence was admitted and the respondent excepted.
The witness testified that the deceased told him she was preg-
nant, and had arranged with the respondent by mail to help her
out of her predicament, and asked the witness to get her thirty-
five dollars wherewith to pay the respondent. *Held,* that the ex-
ception went to the whole testimony and was too extensive to be
available in respect of what the deceased told the witness about
having arranged with the respondent to help her out of her
predicament, since what she told him about being pregnant was

not objected to, as the State subsequently made the promised connection.

In a prosecution against a physician for wrongfully attempting to produce the miscarriage of a pregnant woman, who died in consequence thereof, evidence considered and *held* that it tended to show that the respondent wrote a certain letter destroyed by the deceased and signed "Doc," in which the writer made an appointment with her "to remove that tumor for you."

Standards of comparison by which to test the genuineness of handwriting disputed in a criminal case may be proved by a mere preponderance of the evidence, which may consist only of the opinions of witnesses who did not see the standards written, but have seen the person in question write and claim to be familiar with his handwriting.

A general exception to a specified portion of the charge is bad unless that portion is wholly unsound.

INFORMATION for wrongfully attempting to procure the miscarriage of a pregnant woman, who died in consequence thereof. Plea, not guilty. Trial by jury at the April Term, 1907, Windham County, *Taylor*, J., presiding. Verdict, guilty; and judgment thereon. The respondent excepted. The opinion states the case.

*Senter & Senter* for the respondent.

*R. C. Bacon*, State's Attorney, for the State.

The fact that the respondent testified that he wrote a letter to the deceased on the day in the afternoon of which the letter in question was seen in her possession, taken with the coincidence of his acts with the statement in the letter of what the writer would do, tends to show that the respondent wrote that letter. *Com.* v. *Barrows*, 176 Mass. 17; *Com.* v. *Bishop*, 165 Mass. 148.

The testimony of the witness that the deceased told him that she was pregnant was admissible as tending to show her then physical condition and health. *State* v. *Gedike*, 43 N. J. L. 86; *State* v. *Glass*, 5 Ore. 73; Wig. Ev. §1716. And her further statement that she had made arrangements with the respondent to help her out of her predicament, was admissible as

a part of the *res gestæ. State* v. *Howard,* 32 Vt. 380; *Solander* v. *People,* 2 Colo. 248; *State* v. *Dickinson,* 41 Wis. 299; 1 Gr. Ev. §111.

ROWELL, C. J. This is an information for the statutory crime of employing means with intent to procure the miscarriage of a pregnant woman, the same not being necessary to preserve her life, and who died in consequence thereof. The prisoner lived in Bellows Falls; the woman, in Proctorsville. The State claimed, and its evidence tended to show, that the deceased arranged with the prisoner by mail for the operation; that he sent her two letters concerning the matter, one of which she received the evening before she went to Bellows Falls to meet him; and that the next morning she burned two letters, one of which was signed "Doc," and both of which the State claimed were written by the prisoner. The witness who proved the destruction of the letters testified that when the deceased destroyed them she said she was going to burn them because her sister might get hold of them. The prisoner now objects that this is hearsay, and nothing more. But we think that the declaration was admissible as a part of the act of destroying the letters, *pars rei gestæ,* proof of their destruction being competent for the purpose of laying the foundation for secondary evidence of their contents. The declaration accompanied the act, was calculated to explain and elucidate it, and was so connected with it as to be a part of it, and to derive some degree of credit from it. In such cases the credit that the act gives to the accompanying declaration as a part of the transaction, and the tendency of the declaration to explain the act, distinguish this class of declarations from mere hearsay. Such declarations derive credit and importance as forming a part of the transaction itself, and are included in the accompanying circumstances, which may, as a rule, be given in evidence with the principal fact. But there must be a principal fact or transaction, and only such declarations are admissible as grow out of it, illustrate its character, are contemporaneous with it, and derive some degree of credit from it. *Lund* v. *Inhabitants of Tyngsborough,* 9 Cush. 36; *Waldele* v. *New York Central R. R. Co.,* 95 N. Y. 274; *New Jersey Steamboat Co.* v. *Brockett,* 121 U. S. 637; Steph. Dig. Ev., Chase's ed., 8, n. 3; Thayer's Prel. Treat. Ev. 521, 523. .

The State offered to show the pregnancy of the deceased by her declarations.  The prisoner objected that they were not evidence against him, but said if it was the purpose of the State to connect him with it, he did not object.  The State said that it was its purpose to connect him with it at the other end of the journey, and thereupon the evidence was admitted, and the prisoner excepted.  The witness testified that the deceased told him she was pregnant, and had arranged with the prisoner by mail to help her out of her predicament, and asked the witness to get her thirty-five dollars with which to pay him.  It is contended that what the deceased told the witness about having arranged with the prisoner to help her out of her predicament, was mere narrative, and therefore inadmissible.  But the exception was general, and went to the whole testimony, whereas that part of it that came strictly within the offer, namely, what the deceased said about being pregnant, was not objected to, as the State subsequently connected the prisoner as it said it would. The exception, therefore, is too large to be available.

The State offered secondary evidence of the contents of the letter signed "Doc."  The prisoner objected that there was nothing to connect him with the letter.  The objection was overruled, and the testimony admitted, which showed that the letter read: "Come to Bellows Falls Tuesday next on the noon train, and I will meet you at the depot.  I will remove that tumor for you, and you will be able to go home on the evening train.  Be sure and bring thirty-five dollars with you."

The prisoner claimed, and his testimony tended to show, that he was unacquainted with the deceased, and never saw her till the day on which, by arrangement made by mail, she was to come to his office to have an examination to ascertain what was the matter with her; that she suggested a tumor; that all he did was to make a partial examination, during which she died;  that he made no attempt to procure an abortion, and did nothing to cause her death; that he wrote and mailed to her two letters, one, the day before she came to his office, and one, some days before; that he signed the first with his own name, "Mr. Ryder, M. D.," and added a postscript, which he signed "Doc."  As to the contents of the second letter, he said nothing.

The State's evidence tended to show that pursuant to her arrangement with the prisoner, the deceased went to Bellows

Falls about half-past one in the afternoon of October 30, 1906, accompanied by a young woman who lived in Proctorsville; that when the train arrived at Bellows Falls, the prisoner met them at the depot with a closed carriage that he had previously engaged for that purpose, and by his direction they were taken to his office; that the prisoner soon came on foot, and thereupon gave the deceased the address of a liquor dealer in North Walpole, whither she and her friend went, and returned to the prisoner's office shortly after four o'clock with a bottle of gin, and another bottle, the contents of which did not appear; that the prisoner soon called the deceased into his office, and in about fifteen minutes thereafter she was dead from shock or air embolism.

The prisoner claims that there was no legal evidence that he had anything to do with the letter signed ''Doc,'' and that therefore it was error to admit secondary evidence of its contents. The State claims that the circumstances shown, taken in connection with the prisoner's own testimony, were sufficient to warrant the jury in finding that he wrote the letter; and with this we quite agree.

Proving things by circumstantial evidence is a process of imperfect induction, by which, from the known we infer and find the unknown. But circumstantial evidentiary facts are too various to admit of enumeration, for they are as changeful as the events out of which they grow. They cannot be comprehended within any rule, nor brought under any classification. Great latitude is allowed in their reception, and everything that tends to connect the supposed evidentiary fact with the *factum probandum,* is admissible to prove that fact. Will's Circumst. Ev. 36, 37; *Holmes* v. *Goldsmith,* 147 U. S. 150, 164. Viewed in this light, there is little doubt about the sufficiency of the evidence to connect the prisoner with the letter.

The prisoner introduced two letters addressed to him, which his evidence tended to show were written by the deceased. The State denied that she wrote them, and claimed that the prisoner fabricated them. To sustain this, the State produced several letters, and introduced the testimony of witnesses who said they had seen the deceased write, knew her handwriting, and that the letters produced were in her handwriting. Thereupon the State offered them in evidence as standards of comparison by which

to test the genuineness of the letters introduced by the prisoner. The court found that they were sufficiently proved to be used as standards, and admitted them as such, but, as it would seem, left the ultimate question of their authenticity for the jury. The prisoner excepted, and the only question now made under the exception is as to the kind and character of the evidence by which the standards were proved, it being contended that it was not sufficiently clear, direct, and positive; that they should have been proved by witnesses who saw them written, and established beyond a reasonable doubt; whereas they were proved only by the opinions of witnesses who had seen the deceased write, and claimed to be familiar with her handwriting. In *Rowell* v. *Fuller*, 59 Vt. 688, standards were proved as they were here, by witnesses who did not see them written. It was objected there as here that the evidence was not legally sufficient to warrant a finding of their genuineness. But the Court said it was; that any evidence pertinent to the issue was admissible; and that the question should be tried as any other issue between the parties, and by the same rules of evidence.

About a page of the printed exceptions is a recital from the charge that deals with whether the letters introduced by the prisoner were genuine or fabricated, and with what facts, if proved, would tend to show them genuine. The court then charged upon the prisoner the burden of showing their genuineness by a fair balance of the evidence. The prisoner excepted to all of the charge contained in the recital, without specifying any part of it. He now objects to none of it as erroneous except the part that placed the burden of proof upon him. And clearly none of the rest of it was erroneous; and whether the part now objected to was erroneous we do not consider, for to sustain such an exception, all of the charge recited must be faulty. This, as is said in *Cutler & Martin* v. *Skeels,* 69 Vt. 154, 161, has been so often decided that it is needless to cite authorities in support of it.

*Judgment that there is no error in the proceedings of the County Court, and that the prisoner take nothing by his exceptions. Let sentence be imposed, and execution thereof done.*