ASA TYRRELL *v.* MOSES GOSLANT.

November Term, 1918.

Present: WATSON, C. J., HASELTON, POWERS, TAYLOR, and MILES, JJ.

Opinion filed January 13, 1919.

*Harmless Error—Automobile Collision—Evidence—Authentication of Map—Speed of Car Away from Place of Collision—G. L. 4651—Dim Lights—G. L. 4705—Speed of Passing Vehicles—Exception too Late—Instructions to Jury.*

Error in the admission of evidence is not prejudicial where other undisputed evidence of the same subject matter is received without objection.

In an automobile collision case, it was not prejudicial error to ask the plaintiff in cross-examination if the defendant saw him soon after the accident and demanded damages of him and that he repair defendant's car, when, on objection being made, the question was withdrawn before it was ruled either way.

Exceptions to answers of a witness which add nothing to what the witness has previously stated without objection, are of no avail.

It was not error to allow the civil engineer who surveyed the place

of an automobile collision and made the plan given in evidence, but who was not present at, and had no personal knowledge concerning the accident, to testify that the defendant pointed out to him what defendant called the tracks of an automobile and the place where defendant claimed the automobile tipped over.

Where the plaintiff claimed that the defendant's automobile lights were not dimmed as required by G. L. 4651, it was not error to allow the defendant, who had testified that he drove his car very slowly because his lights were dim, to testify, for the purpose of showing that his battery was weak, that he could not start his car on that battery.

An exception taken after a responsive answer to a question has been given is too late.

In an automobile collision case, evidence of plaintiff's rate of speed when he passed the witness' car one mile from the place of collision was admissible; there being evidence tending to show that plaintiff's speed did not slacken until the collision.

An instruction to the jury that No. 136, Sec. 2, Laws of 1917 (G. L. 4705), requiring passing vehicles to not exceed twenty miles an hour, made a higher rate of speed unlawful, was not erroneous because it failed to add that such unlawful speed must be a contributing cause to the accident, where there was no exception to the failure to so charge.

ACTION OF TORT for negligence in operating an automobile. Plea, the general issue. Trial by jury at the March Term, 1918, Washington County, *Fish*, J., presiding. Verdict and judgment for the defendant. The plaintiff excepted. The opinion states the case.

*John W. Gordon* for the plaintiff.

In jurisdictions where the violation of the law is negligence *per se*, as well as in jurisdictions where it is merely evidence of negligence, it is invariably held that the violation of the law must be a proximate cause or else it has no effect. *Grier* v. *Samuel*, 4 Boyce (27 Del.) 106; *Coffin* v. *Laskau*, 89 Conn. 325; *Farrington* v. *Cheoponis*, 84 Conn. 1; *Thies* v. *Thomas*, 77 N. Y. Supp. 276; *Yarbrough* v. *Carter*, 179 Ala. 356; *Stohlman* v. *Martin*, 28 Cal. App. 338; *Herdman, Admr.* v. *Zwart*, 167 Iowa 500; *Scott* v. *Dow*, 162 Mich. 636; *Day* v. *Duluth Street Ry. Co.*

121 Minn. 445; *Meyer* v. *Creighton*, 83 N. J. L. 749; *McCarragher* v. *Prod*, 114 App. Div. (N. Y.) 470; *Beisegel* v. *N. Y. C. R. Co.*, 14 Abb. Pr. (N. S.) (N. Y.) 29.

*F. L. Laird* and *J. Ward Carver* for the defendant.

WATSON, C. J.   The plaintiff seeks to recover for injuries to his person and his automobile, caused by the alleged negligence of the defendant.

It appeared that the plaintiff, together with five young men, left Barre in his automobile about 8 o'clock in the evening of July 28, 1917, on a trip to Joe's Pond in the town of Cabot, to attend a dance; that the defendant, who owns a farm on the main highway between Plainfield village and Marshfield village, the highway over which plaintiff and party were traveling at the time in question, took his automobile and with his family and friends went to the latter village to attend a band concert, but as there was no concert that evening, he started to return and was within about one mile of his home when a collision took place between his automobile and the plaintiff's automobile, going in opposite directions.   This was about 8.30 o'clock.   The traveled portion of the highway at the place of collision was, according to plaintiff's evidence, 15 feet wide, and according to defendant's evidence, 16½ feet wide, and by all the evidence the road along there was good.

The plaintiff's evidence tended to show that at the time of the collision he was proceeding on his right-hand side of the center of the highway, at a rate of speed from fifteen to eighteen miles an hour.   On the other hand, the defendant's evidence tended to show that the speed at which plaintiff's car was then running was from thirty to forty miles an hour.

The plaintiff testified in his own behalf.   In cross-examination he was asked if the boys with him in the automobile on that trip sang any on the way and, subject to exception as immaterial, answered that he would not say they did not sing.   The same question was saved in connection with the testimony of one of the young men in the party, who testified that they were singing, off and on, going over.   But three of the young men testified without objection that their party were singing more or less on the way over, and one of them said "had been singing all the way up."   This evidence was not disputed.   The fact of

such singing being so shown by evidence received without objection, even though the rulings were erroneous (which we do not decide) they do not appear to have been prejudicial.

The plaintiff testified in cross-examination that he saw the defendant the next Monday after the accident. He was then asked whether on that Monday the defendant demanded damages of him and that he repair defendant's car? Ojection being made that such evidence would be a declaration by defendant in his own interest, and exception saved, the question was withdrawn before it was ruled either way. We have no reason to believe that prejudice resulted therefrom.

Dewey Stone, one of the plaintiff's party, testified in cross-examination, without objection, that they ran by quite a number of cars when going on that trip; that when they came to a car they went by it. He was then asked if he knew how many cars they passed from the time they left Barre to the time they got up there, and, against exception as immaterial, answered that he did not. Against exception the witness was asked if they passed a good many cars, and answered that they passed some. These answers given under exception, add nothing to what the witness previously stated without objection, and the exceptions are of no avail.

Elbridge Gilman, a civil engineer called by the defendant, testified that some three days after the accident, at defendant's request, he made a survey and plan of a portion of the highway in question, particularly between the residence of C. H. Collins and the "Joe barn," which includes the point where the collision in question occurred; which plan is marked in this case as "Exhibit 1"; that the defendant was with him on the highway when the survey was made, and pointed out some things which were put in the plan, including the place in the highway where his axle dropped and where his car stopped at the time of the collision; that at that point there was a place ploughed or scooped out of the hard roadbed, probably three inches deep and twelve or fourteen inches across. This point is marked on the plan, which says above it, "Cars met point," with an arrow pointing down. From the place of the accident, for a distance of twenty-seven rods, going northerly toward Marshfield, the road is ascending. At the top of the hill the "Joe barn" is located. From the same place for a distance of sixty-nine rods, going southerly toward Plainfield, the road is also ascending,

and at the top of that hill the C. H. Collins residence is located. Between these summits the highway is practically straight, and a person in the highway at the top of either, can see clearly the highway at the top of the other. At the point where the cars met, the road is nearly on a level. The witness testified that at the time of making the survey the defendant pointed out to him what defendant called the tracks of an automobile, that went across or crosswise of the road, which the witness followed. He was then asked if the defendant pointed them out as the tracks of any particular automobile and, subject to exception on the ground that the question called for what defendant said, he was permitted to answer categorically, and did, ''Yes.'' The witness further testified that the tracks so pointed out ran from the place scooped out in the highway, across the road to a point five rods distant, up on a bank, at which latter place the grass had been trodden down, and he found there broken glass a plenty, and two cigarette boxes; that the latter place was pointed out to him by the defendant as the place where he claimed the automobile tipped over. The witness was not present at the accident and had no personal knowledge concerning it. It became necessary for some one, having knowledge thereof, to point out to him, on the ground, the different places important to be located on the plan, or from or to which measurements were to be made by him in connection with objects so located. There was no error in the ruling to which the exception was taken. *State* v. *Shaw,* 73 Vt. 149, 50 Atl. 863.

The defendant testified that he drove his car very slowly on the night in question, because his lights were dim; that his car had just been taken from the garage, where it was housed through the winter; that his battery was kept down cellar in the winter, and it had not been charged since the summer before. To show that the battery was weak, he was permitted to state, subject to exception as having no bearing, that he could not start his car on that battery. The plaintiff claimed and his evidence tended to show that defendant's lights were not within the law, not being dimmed as the statute (G. L. 4651) requires. Such claim, within the tendency of the evidence, being made, we cannot say that the testimony objected to was wrongly received for the purpose stated.

Albert C. Johnson, a witness for defendant, was riding in the latter's car at the time of the collision. He was asked

whether, as the car was being operated, there was sufficient room in the highway for the plaintiff to pass, and answered in the affirmative. After this answer, strictly responsive, was given, the plaintiff objected to the witness's giving his opinion, and noted an exception. But this exception was too late to be of any avail. *Ford* v. *Hersey*, 92 Vt. 405, 104 Atl. 875.

Ernest S. Folsom, a witness for the defence, testified to being at the place of the accident soon after it occurred, same evening; that he was passing over the road toward Marshfield in his automobile; that just about a mile back from the scene of the accident, toward Plainfield, the plaintiff's car came up behind the witness's car, whistled for the road, and, on its being given, passed by. The witness was then asked, "How fast were they going, should you say?" Objection that it was not evidence of the speed at the place of collision being made, the question was withdrawn and the witness asked how fast he was going when the plaintiff's automobile passed him. The same objection was made, with the addition that there was no showing of a continuation of the speed to the point of collision. The court, stating it was the same question as before in another form, received the answer subject to exception. The witness said he "should say around twenty-five to thirty miles an hour." Against the same exception he was asked, "Did he pass your car while you were going at that rate of speed?" and answered, "Why, yes, sir, he did." Under the same exception, the witness then testified that he should say the plaintiff's car was going thirty-five to forty miles an hour. "Q. Did you continue at your rate of speed to follow up this Mr. Tyrrell's car? A. Yes, sir." This witness did not see the collision, but after he reached the Collins house he saw the headlights "sticking up in the air," down in the valley beyond. Cyrus Sulham, who was riding in the automobile with the last witness, testified against the same exception, that when plaintiff's car passed them it was going very fast, and in cross-examination he said it was going more than thirty or thirty-five miles an hour. He further testified that when the car he was in was up by the Collins barn, he saw the lights down in the hollow shine up, and Folsom said he guessed there was a smash-up. From the testimony of these two witnesses, and other evidence in the case, it might well be found that while Folsom's car was going from the place where the plaintiff's car passed it to the Collins barn, a distance of about 251 rods, at the rate of

twenty-five or thirty miles an hour, the plaintiff's car ran not
only the same distance, but in addition thereto, by actual meas-
urement, sixty-nine rods to the place of the accident, collided
with defendant's car, crossed the road and tipped over on the
bank, where it was with its lights shining up in the air as they
were when seen by these witnesses from the Collins place.   The
defendant's evidence further tended to show that in coming
down the hill from the place last named, toward the place of
collision, the plaintiff's car was running "at a very high rate of
speed," and when it came on to defendant it was "going thirty
miles an hour, or more." When the cars collided, the plaintiff's
car continued to run from three to five rods further, then tipped
over.   One witness said the car, in running this latter distance,
"went out of the road some, and then shied back into the road,"
going to where it tipped over—a cogent circumstance indicating
that it was moving at great speed when it struck defendant's
car.   The evidence to which reference is above made tended to
show that the speed of the plaintiff's automobile was not slack-
ened after passing Folsom's car back a mile from the place of
the accident, until the collision.   Evidence of the rate of speed
of plaintiff's car at the point of such passing was therefore not
improperly received as bearing on the question of the speed of
the car at the place in question.   Wig. Ev. Sec. 382; *Louisville,
etc., R. Co.* v. *Jones,* 108 Ind. 551, 9 N. E. 475; *National Casket
Co.* v. *Powar,* 137 Ky. 156, 125 S. W. 279.

The court instructed the jury, among other things, as fol-
lows:   "Now the second section of this Act, which is No. 136 of
the Laws of 1917, provides as follows:  'Meeting vehicles mov-
ing in opposite directions shall exercise due care, and shall each
keep to the right of the center of the highway so as to pass with-
out interference, and at a rate of speed not exceeding twenty
miles an hour.'  So if either of these cars was proceeding at a
rate of speed exceeding twenty miles an hour, that car was mov-
ing at an unlawful rate of speed, at a rate of speed that the law
did not authorize or warrant, and the party in such a car, going
at such a speed, was moving along the highway at a rate and in a
manner which the law forbids."   The plaintiff excepted to
what the court here said about the speed of twenty miles, so far
as the jury fail to find that that, in itself, was a contributing
cause to the accident.

The charge in this respect, as far as it went, was in ac-

cordance with the provisions of the statute mentioned. It may be that the court should have gone further and stated in effect that the unlawful speed, if it be found (and there was evidence on which it could be found as against the plaintiff), must be a proximate cause of the accident, in order to constitute contributory negligence preventing a recovery; but the exception is to the charge given, not to the failure or omission to give other or further instructions, so the question of such failure or omission is not before us. *Hathaway* v. *Goslant,* 77 Vt. 199, 59 Atl. 835.

*Judgment affirmed.*