STATE *v.* WALLIS L. FAIRBANKS.

May Term, 1929.

Present: WATSON, C. J., POWERS, SLACK, MOULTON, and WILLCOX, JJ.

Opinion filed November 6, 1929.

*Herbert G. Tupper* and *Stanley C. Wilson* for the respondent.

*J. Ward Carver,* Attorney General, and *Charles B. Adams,* special counsel, for the State.

WILLCOX, J. This cause has been in this Court once before and comes here again on exceptions by respondent, following a second trial and second conviction of the crime of adultery, of which the respondent is charged with having committed with one Irma Stoodley, she being an unmarried woman and the respondent being a married man.

The first exception relied upon relates to the exclusion of a question put to Irma Stoodley, the complaining witness, in cross-examination by respondent's counsel. The State's evidence tended to show at least twelve specific instances of sexual intercourse between this witness and the respondent, including the

one he was on trial for; and the State introduced fifteen letters written by the respondent to her, the first dated May 21, 1926, and the last September 13, 1926. In one, written June 13, 1926, the respondent wrote, ''I should not have called you up, but I felt rather worried about you. I won't do it again.''

The respondent sought to show in cross-examining this witness that she had syphilis and had told the respondent about it, claiming that it bore directly upon her testimony of having had intercourse with the respondent and the reasonableness or unreasonableness of the fact so testified to. The State objected to this as not proper cross-examination, and the court so ruled; but the State withdrew its objection and the witness was permitted to testify that in March, 1925, she told the respondent she had syphilis.

■■ In further cross-examination the respondent offered in explanation of the letter of June 13 to show various Wassermann tests for syphilis made by different doctors and communicated to the respondent before said letter was written. This was excluded and the respondent excepted. This matter was plainly cross-examination, but the respondent made an offer, so the question is, was it admissible under the offer. The general rule is that a cross-examiner need not make an offer disclosing the purpose of his cross-examination. But when such an offer is made, the trial court may rely upon it and need not consider other aspects of the evidence offered. So we do not inquire further than it was encumbent upon the trial court to do. *Green* v. *LaClair*, 91 Vt. 23, 27, 99 Atl. 244. That the respondent knew about the girl's condition and the tests taken in respect thereto was admissible for what it was worth in support of the theory that it was this condition that was referred to when he wrote he felt rather worried about her.

■■ The second and third exceptions relate to two questions put to and answered by Irma Stoodley on redirect examination by the State, by which she testified that she pleaded guilty in Montpelier city court to a charge of adultery committed with the respondent at Warren, Vermont, July 18, 1926, being the same date and place alleged in the indictment upon which the respondent was being tried.

The State in its direct examination of this witness sought to show the same fact, and against the objection of the respondent it was excluded. In cross-examination the respondent asked

a large number of questions for the purpose of showing that some promise had been made to Irma Stoodley to the effect that if she testified against the respondent some favor would be her reward. Substantially all questions along this line brought negative answers, but the respondent in the cross-examination brought out the fact that she at some time was confined in the Reformatory at Rutland, Vermont. Nowhere in the cross-examination, or elsewhere, had it appeared why she was in such institution—the same being the State's prison and house of correction for women. It was proper redirect examination for the State to show the fact that she had been sentenced upon her plea and thus not leave the jury to speculate on why she was in the Rutland institution or whether or not any favors had been extended to her. Underhill on Criminal Evidence (3rd ed.), § 357.

If there was any obscurity about the fact of whether promises had been made to her for her testimony, it was proper redirect examination to clear up such obscurities, even though the evidence is not in its strictest sense explanatory or relevant to matters brought out in cross-examination. Elliott on Evidence, vol. 2, § 928.

There was no error in permitting this redirect examination.

 Exception four presents a question very similar to that covered by the second and third exceptions. In cross-examination of Irma Stoodley the respondent sought to show that more than one person had held out some sort of inducements to her to testify against the respondent on numerous occasions when she had been required to relate the account of her relations with the respondent. Although the inquiries, in the main, brought negative answers, yet there were some replies that indicated that the witness at least at some time had a hope or expectation that she might be allowed to return to her home and not have to suffer the full penalty of the law.

Was it proper redirect examination for the State to show by one general question that no one had offered her any inducement to testify against the respondent? The cross-examination had a tendency to leave obscure the question of whether she had testified under the influence of some inducement or not. It was proper redirect examination to clear up such obscurities. Elliott on Evidence, vol. 2, §§ 928-930.

■ Exceptions five and six relate to the exclusion of two questions put in cross-examination to the State's witness, Mrs. Kessler, sister of Irma Stoodley. The State showed by this witness and otherwise that on an occasion early in July, 1926, when Irma Stoodley came from Waterbury, accompanied by one Minnie Rushford, for a visit at her sister's home in Chester, the respondent went twice to the Kessler home, the first time leaving a letter for Irma, the second time telling Mrs. Kessler that he wanted to see Irma. The excluded questions were put to show the reasons stated by the respondent why he wanted to see Irma. The fact that the respondent called at the Kessler home and inquired for Irma was introduced by the State as evidence tending to support the claim of improper intimacy and clandestine meetings for that purpose. This being so, the act of the respondent was equivocal and evidence of his statements made contemporaneously was admissible in explanation of it as part of the *res gestae*. *State* v. *Ryder,* 80 Vt. 422, 68 Atl. 652; *State* v. *Dropolski,* 100 Vt. 259, 266, 136 Atl. 835; *State* v. *Bean,* 77 Vt. 384, 392, 60 Atl. 807; *State* v. *Kamuda,* 98 Vt. 466, 474, 129 Atl. 306; *State* v. *White,* 77 Vt. 241, 59 Atl. 829, 2 Ann. Cas. 302; *Jewett* v. *Buck,* 78 Vt. 353, 356, 63 Atl. 136; *State* v. *Mahon,* 32 Vt. 241, 244. The fact that part of the conversation not brought out in direct examination was a declaration in favor of the party is no exception to the rule. *State* v. *Daley,* 53 Vt. 442, 38 A. R. 694; 40 Cyc. 2491, 2492; *Wilson* v. *Gordon,* 73 S. C. 155, 53 S. E. 79; *Cornett* v. *Brooks,* 206 Ala. 566, 90 So. 787.

In *State* v. *Howard,* 32 Vt. 380, 78 A. D. 609, in speaking of declarations of a party as to the purposes of her journey, Redfield, C. J., said, "The declarations were of the same force as the act of going, and were admissible as part of the act." In *Elkins* v. *Hamilton et al.,* 20 Vt. 627, the same judge says as to the declarations of witnesses: "The Court were no doubt right in regarding his naked declarations as not being competent evidence; and equally correct in admitting them when made in connection with his acts, which become controverted matters in the trial." It was said in *State* v. *Daley, supra,* Taft, J.: "It is well established that where evidence of an act done by a party, is admissible, his declarations, made at the time, having a tendency to elucidate, explain, or give character to the act, are also admissible. They are admissible because they are a

■

part of the transaction, as well in favor of, as against the party making them, and may be given in evidence by the defendant as well as the State.'' See also *Danforth* v. *Streeter*, 28 Vt. 490, 495; *Eddy* v. *Davis*, 34 Vt. 209, 212; *State* v. *Ryder, supra*. The exclusion was prejudicial error.

■ Exception seven is not considered, for if there was error in permitting the question to be answered, it was harmless, the witness having already testified to the same thing without objection. *Woodhouse* v. *Woodhouse*, 99 Vt. 91, 117, 120, 124, 130 Atl. 758.

■ Exceptions eight and nine relate to two questions put to and answered by Minnie Rushford on redirect examination by the State. The respondent, in cross-examination of this witness, got answers from her to the effect that following the former trial of this cause (and after the witness had been arraigned and pleaded guilty to a charge of adultery with the respondent and was in charge of one Tucker, a deputy sheriff, who was about to take her for commitment to the Industrial School at Vergennes), she stated to him that had she known how the Fairbanks Case was coming out she would have testified differently. This admission was drawn out of the witness in connection with an extended cross-examination to which she was subjected for the purpose of impeachment, by showing statements contrary to and inconsistent with the testimony given by her at this trial. The State in redirect examination, under objection and exception, was allowed to show that on the day she admitted she told Tucker, ''had she known how the Fairbanks Case was coming out she would have testified differently,'' the witness had been arraigned in Bellows Falls municipal court on a charge of adultery with the respondent, alleged to have been committed in a pine woods in the town of Rockingham, and had pleaded guilty thereto. The State had shown by this witness that she had had sexual intercourse with the respondent in the pine woods at Rockingham on an occasion when the Stoodley girl was present.

The State, in support of the correctness of this ruling, argues that the admission made to Tucker related to the case against her, that she said that if *she* had known how she was coming out she would have testified differently; that it was admissible to show her frame of mind as a result of what had just happened to her that day. The record does not support

this claim. It is clear that the witness was talking about the first trial of *State* v. *Fairbanks,* in which she had shortly before testified as a witness. She might have had in mind that had she testified differently against Fairbanks, her own fate might have been different, but the record does not show it to be thus.

It was said in *Phelps* v. *Utley,* 92 Vt. 40-42, 101 Atl. 1011: "It may be stated broadly that a litigant may prove any act, conduct, or statement on the part of his adversary which tends to corroborate the claim of the former or impeach that of the latter, but he cannot corroborate himself or his own witness by extra judicial acts, conduct, or statements having that tendency." *Munson* v. *Hastings,* 12 Vt. 346, 36 A. D. 345; *Gibbs* v. *Linsley,* 13 Vt. 208; *State* v. *Flint,* 60 Vt. 304, 14 Atl. 178, 184; *Lavigne* v. *Lee,* 71 Vt. 167, 42 Atl. 1093; *State* v. *Turley,* 87 Vt. 163, 88 Atl. 562.

In *State* v. *Flint, supra,* it was said: "It is a well-established rule that proof of declarations made by a witness out of court in corroboration of testimony given by him at the trial is inadmissible. But with this rule there has come an exception * * * *. It is stated in one form by Bronson, J., in *Robb* v. *Hackly,* 23 Wend. [N. Y.] 50: 'If an attempt is made to discredit the witness on the ground that his testimony is given under the influence of some motive prompting him to make a false and colored statement, the party calling him has been allowed to show, in reply, that the witness made similar declarations at a time when the motive did not exist.' In Greenleaf on Evidence, § 469, the author states the rule thus: 'But evidence that he has on other occasions, made statements similar to what he has testified to in the cause, is not admissible; unless where a design to misrepresent is charged upon the witness, in consequence of his relation to the party, or to the cause; in which case, it seems it may be proper to show that he made a similar statement before that relation existed.' "

It is plain that the plea of guilty of adultery with the respondent corroborated the testimony of the witness that she had committed adultery with the respondent, and whatever the motive may have been that prompted the witness to testify against the respondent, or whatever may have been her relation to the cause he was on trial for, that motive or that relation came to exist long before she pleaded guilty.

The testimony received was within the rule and not within the exception, and should have been excluded. Its admission was prejudicial error.

■ Exceptions ten and fifteen are considered together. The State improved one Harris and later on one Baker for the purpose of showing that they saw the respondent at the Trotter home in Springfield, Vt., where Miss Stoodley once had a room. Harris was asked, "What did you go there for?" and, under objection and exception, answered, "I went down to see if I could get a drink." Baker was asked, "What did you go there for?" A. "I went there to get a drink of booze, occasionally." Q. "Did Mrs. Trotter sell booze?" A. "She did." Q. "What were you doing there in the kitchen?" and answered "We were having a drink."

The fact that the Trotter woman sold liquor had already been shown by the State by Miss Stoodley without objection, and later, without objection, was again shown by State's witness Wood. If there was error in permitting these questions to be answered, it was harmless. *Tyrell* v. *Goslant*, 93 Vt. 63, 106 Atl. 585; *Lowell* v. *Wheeler's Estate*, 95 Vt. 113, 112 Atl. 361; *Bancroft* v. *Vail*, 95 Vt. 304, 115 Atl. 224; *Murray* v. *Nelson*, 97 Vt. 101, 122 Atl. 519; *Woodhouse* v. *Woodhouse, supra; Burke* v. *Powers' Estate*, 100 Vt. 342, 137 Atl. 202.

■ Exceptions eleven to fourteen, both inclusive, relate to the manner in which the direct examination of a State's witness was conducted—the respondent contending that the State undertook to impeach its own witness by alleged contradictory statements, without first laying any foundation for such impeachment and without any leave of the court first had and obtained. None of the grounds of objections now urged were stated below, so under our well-understood rule, this Court will not consider a ground for the exclusion of evidence not raised below. *Patterson's Admr.* v. *M. W. & A.*, 89 Vt. 305, 95 Atl. 692; *Niles* v. *Danforth*, 97 Vt. 88, 122 Atl. 498; *Hendrickson* v. *International Harvester Co.*, 100 Vt. 161, 135 Atl. 702; *Landry* v. *Hubert*, 100 Vt. 268, 137 Atl. 97.

■ The only ground of objection stated to any of the questions was that the witness had already answered the question. It was within the discretion of the court to permit the putting of a question that had already been answered. The record does not show an abuse of discretion in this regard.

*State* v. *Long,* 95 Vt. 485, 491, 115 Atl. 734; *Landry* v. *Hubert, supra.*

Exception sixteen. The witness Baker was improved by the State for the purpose of showing that on an occasion when he was at the Trotter home when Irma Stoodley roomed there, the respondent came up the stairs and went into a room off the front hall, that Irma left the kitchen, where the witness was, and went to that room. An examination of the record shows that this witness proved to be hostile and evaded giving answers to matters he evidently had communicated to counsel for the State. He denied that he saw the respondent, but in response to a direct question whether he mentioned the name of the respondent, he replied that he "did not remember mentioning his name." He was then asked, "Wasn't there any name mentioned?" and answered, "I remember his name being mentioned, I don't remember who mentioned it." Then this took place. "Q. When was it with respect to the time you heard this man going into the room, that you heard this name mentioned?" The objection was: "This man said he didn't see who this was that came up, and he certainly can't identify anybody by proxy." Under exception he answered, "I should say five minutes afterwards." If there was error in permitting the question to be answered, it was harmless for it had already appeared without objection that, while Irma Stoodley lived at the Trotter home, the owner of the building, who occupied the ground floor, saw the respondent going in and out of the Trotter tenement on the average of about three times a week.

The most that can be said for the testimony of this witness is that the State failed to identify the respondent as the person who came up into the Trotter tenement when Harris and Baker were present with Irma Stoodley in the Trotter kitchen. It does not appear that the respondent was prejudiced, in view of the facts otherwise testified to without objection and undenied, that the respondent frequently went into the Trotter tenement while Irma Stoodley roomed there. *Tyrell* v. *Goslant, supra.*

*Judgment reversed, conviction and sentence set aside, and cause remanded.*